SUMMUNDUWOT LODGE NO. 3, INDEPENDENT ORDER OF
ODD FELLOWS, *Appellant*, v. JOHN SPAETH, *as County
Treasurer, et al., Appellees.*

No. 16,524.

TAXATION—*Exemption—Lodge Property—Rent.* Property of an
Odd Fellows' lodge held not exempt from taxation because the
owner is not a charitable and benevolent corporation, and rent
derived from the leased portion of the property held not
exempt because it is not applied exclusively to charitable
purposes.

Appeal from Wyandotte district court; EDWARD L.
FISCHER, judge. Opinion filed February 12, 1910. Af-
firmed.

### STATEMENT.

THIS action was commenced in the district court of
Wyandotte county by the Odd Fellows' lodge to enjoin
the county officers from collecting the taxes assessed
against the property described in the petition, on the
ground that the property was exempt from taxation
by the provisions of section 2 of chapter 408 of the
Laws of 1907. The case was tried upon an agreed
statement of facts, which contains, in addition to the
facts of ownership, occupation, etc., of the property
assessed, the constitution and laws of the Independent
Order of Odd Fellows.

As shown by the agreed statement of facts, the
plaintiff is a subordinate lodge chartered by the sov-
ereign grand lodge of Odd Fellows of the United
States, July 25, 1857, and ever since has maintained
its organization and identity within Wyandotte county.
It was chartered by the state as a charitable corpora-
tion, without capital stock, November 14, 1885. As
such corporation it owns lots 28 and 29 of block 115
in Kansas City, Kan., upon which it has a three-story
brick building with a basement. The building covers

the entire outline of the lots.  The entire third floor of the building is designed and used by the plaintiff as a hall for a meeting place of the lodge, with antechambers, halls, passages, and other compartments designed and used as appurtenant to the lodge.  A part of the second floor is used as a banquet room and kitchen, and is appurtenant to the lodge.  The remainder of the second floor and all of the first floor and the basement are rented by the plaintiff for office, store, shop and other legitimate purposes, and all the net rents and earnings received by the plaintiff from the occupants of such basement, first floor and portion of the second floor are used for and applied exclusively to purposes authorized by the constitution and by-laws of the order.  The plaintiff also owns books, papers, furniture, apparatus and instruments kept in the lodge rooms and appurtenant to the rooms of the plaintiff and used exclusively in its lodge work.  The real estate was assessed at a valuation of $49,000, and the personal property at $750.  The rate of taxation for the year 1908 was 1.41 per cent.

The part of the agreed statement of facts relating to moneys received and the disbursements thereof we copy in full, as follows:

"It is stipulated and agreed that plaintiff lodge is composed of more than three hundred white male members, above the age of twenty-one years, who became members thereof in accordance with the rules laid down by the laws of the society as set forth in the constitution, laws and by-laws hereto attached, and that such members pay membership dues in accordance with such laws unless excused from payment by the action of the lodge taken in accordance with the laws of the Independent Order of Odd Fellows; and that all of the moneys received by plaintiff from such dues or assessments and from all payments of whatsoever kind or nature, including the entire net rental income received by plaintiff from the portions of its building rented by it as set forth herein, are by plaintiff placed in its treasury and kept by plaintiff solely and exclusively

for the purpose of carrying on its work and benevolences and charities, and are used by plaintiff solely and exclusively in payments or disbursements to sick and disabled members and in providing and securing for its members while sick and disabled, in burying the dead, in contributions made to widows and children and dependents of members, and in educating the orphan children, and such other donations as from time to time may be made by vote of the lodge or by the proper action of its officers and committees in payment of grand lodge *per capita,* and in paying the necessary expense incident to carrying on the relief work of the lodge, and in paying for and maintaining the property set forth in this agreed statement of facts and belonging to the lodge.

"It is further stipulated and agreed that disbursements or donations are and may be made whenever needed by any member or dependent at any time by vote of the lodge or the proper act of the constituted officers or committees of the lodge, for purposes authorized by the constitution and laws of the society, in addition to the weekly dues and benefits demandable by a member for sickness or disability.

"It is further stipulated and agreed that such disbursements or donations are chiefly made to members of plaintiff lodge or members of other subordinate lodges of the Independent Order of Odd Fellows, or to the widows, children or other dependents of members of this or other subordinate lodge, but that from time to time donations may be and are made to persons who are not members of this or any other subordinate lodge or dependent upon any member of this or other subordinate lodge, but such disbursements made to others than members, widows, orphans or dependents of members do not exceed in the aggregate ten (10) per cent of the total disbursements made by it.

"It is further stipulated and agreed that no part or portion of the income or moneys received by plaintiff from any source whatsoever becomes or is the property of any person or individual whatsoever.

"It is further stipulated and agreed that no property belonging to this lodge or which may become the property of this lodge by gift, purchase, or otherwise, is or can become the property of any person or individual in any manner whatsoever, but that all property now be-

longing to the lodge or which may be by the lodge in any manner acquired, must be kept, retained and used by it exclusively for the purposes named in the constitution and laws governing plaintiff and attached hereto."

Aside from the rents of its property, the income of the plaintiff lodge, as shown by its by-laws, which are made a part of the agreed statement of facts, is derived from (1) fees for the initiation of candidates for membership, which run from $5 to $75, according to age and other conditions; (2) fines for reinstatement of members dropped for nonpayment of dues; (3) fees for visiting cards, withdrawal cards, and dismissal certificates; (4) dues, which are $1.50 per quarter—$6 per year. The penalties for the nonpayment of dues are set forth in sections 1 and 2 of article 4 of the by-laws, as follow:

"SECTION 1. A member of this lodge who shall become in arrears, for an amount equal to three months' dues, shall not be entitled to receive the S. A. P. W., or to speak, vote or to hold office in this lodge (but is a contributing member thereof until declared to be dropped for nonpayment of dues, or expelled, and as such is entitled to visit this lodge), and shall forfeit all right to weekly or funeral benefits, as follows: If the indebtedness be for an amount equal to three months' dues, then for the space of two months after paying the same, together with all dues and fines that may have accrued against him up to the date of payment; if for an amount equal to six months' dues or more, then for the space of six months after; provided that notice, as required by section 3 of this article, has been sent or delivered to the delinquent member. If a member be indebted for an amount equal to more than one year's dues, and one year's time has expired since he was last clear of the books, he shall be subject to be dropped from membership for nonpayment of dues, and as such shall be debarred from benefits, both pecuniary and attentive, and from all the rights and privileges of an 'active Odd Fellow,' but he can not be ex-

58—81 KAN.

pelled from the order on account of being in arrears
for dues.

"SEC. 2. Arrears shall not exclude a member from
visitation, care and attention during sickness or disa-
bility, or funeral honors when death ensues, unless he
be dropped from membership for nonpayment thereof."

Section 1 of article 7 of the by-laws reads:

"The funds of this lodge are stamped 'trust funds,'
and shall not be used for any purpose except the legiti-
mate objects of the order. No funds can be donated
unless the same is passed by a vote of two-thirds of the
members present at a regular meeting."

Section 1 of article 8 of the by-laws reads:

"The salary of the recording secretary shall be $75
per year; that of the financial secretary shall be $75
per year; that of the treasurer shall be $50 per year;
that of the trustees shall be $6 per year each, except
that of the secretary of the trustees, which shall be
$30 per year; the salary of the member of the union
relief committee from this lodge shall be $20 per year;
all of which salaries shall be paid quarterly. The
salary of the janitor shall be $40 per month, payable
at the close of each month."

A by-law imposed by the Kansas grand lodge on the
subordinate lodges reads in part as follows:

"A lodge has not the right to vote its funds for a
festival, excursion or other occasion, as it may elect,
even though it has the proper permission from the
grand officers to hold such festival, etc., in the name of
the order. The money in the treasury of the lodge is
stamped as *trust funds,* only to be used for the legiti-
mate objects of the order. 'The peculiar office of a
subordinate lodge is to provide means to meet the
claims of its sick and distressed members, to care for
them properly during their illness, to bury the dead,
to succor the widow, and to educate the orphan.' "

The court found that the property was not exempt
and refused the injunction prayed for by the plaintiff,
which brings the case here.

Odd Fellows v. Spaeth.

*George R. Allen,* and *J. W. Dana,* for the appellant.

*Joseph Taggart,* county attorney, and *J. H. Luscombe,* assistant county attorney, for the appellees.

*Per Curiam:* Under the evidence in this case and the definition of "benevolent and charitable" given in *Mason v. Zimmerman,* ante, p. 799, the plaintiff is not a benevolent and charitable corporation, and its property in question is not exempt from taxation under the provisions of section 2 of chapter 408 of the Laws of 1907.

Also, it appears from the agreed statement of facts in the case that the rent derived from the leased portion of the building in question is kept for "carrying on its work and benevolences and charities, . . . and in paying the necessary expense incident to carrying on the relief work of the lodge, and in paying for and maintaining the property set forth in this agreed statement of facts and belonging to the lodge." It appears from this that at least a portion of the rents derived is not devoted to charitable purposes, but a portion thereof is applied to paying for the property in question. The portion of rent so applied is accumulation and profit, and under this stipulation it can not be said that the rents are applied exclusively to benevolent and charitable purposes.

The plaintiff, therefore, failed to show that under the provisions of section 2, supra, its property is exempt from taxation, as alleged in its petition. It does not contend that the property in question is exempt under the constitutional provision. The judgment is therefore affirmed.

MASON, J., not sitting.