CARTERET ACADEMY, AN ASSOCIATION NOT FOR PECU-
NIARY PROFIT, INCORPORATED UNDER THE LAWS
OF NEW JERSEY, APPELLANT, v. THE STATE BOARD
OF TAXES AND ASSESSMENT AND THE CITY OF
ORANGE, RESPONDENTS.

Argued March 6, 1923—Decided April 27, 1923.

On appeal from the Supreme Court, in which the following
*per curiam* was filed:

"The prosecutor is a corporation organized on June 10th,
1920, under 'An act to incorporate associations not for pecu-
niary profit, approved April 21st, 1898, and the several sup-
plements thereto and acts amendatory thereof.'

"In 1901 Carteret academy was organized under the Gen-
eral Corporation law as the Kennedy-Meade Company as a
business venture to conduct a boys' school in the city of
Orange. It is inferable from the facts that the school was
styled Carteret Academy, and later on it was deemed ad-
visable that the name of the corporation should correspond
with the name of the school. In 1909, the Carteret acad-
emy, as such, was incorporated under the General Corpora-
tion act with a capital stock of $10,000, all of which appears
to have been owned, at the time of the organization of the
present Carteret Academy Corporation, in 1920, by its head
master, Mead, and two of its associate head masters, Waffi
and Soule.

"Upon the organization of the new Carteret Academy Cor-
poration, in June, 1920, it contemplated purchasing, and did
purchase, all the property of the old corporation which ap-
pears was owned by Mead, Waffi & Soule, subject to a mort-
gage of $68,000, bearing five per cent. interest, which was a
lien upon the property.

"For the purpose of paying for the property the present
company issued $225,000 of six per cent. bonds, and from
the proceeds of the sale thereof it paid to Mead, Waffi &
Soule for the property $35,000 in cash and $40,000 in bonds

for the capital stock of $10,000. Of the $40,000 paid for the property in bonds, Mr. Mead received $25,000 and Messrs. Waffi and Soule $15,000 each, besides the $35,000 paid in cash for the property. From the proceeds of the sale of the bonds the new corporation bought additional property, so that it now owns more than five acres. Thus it appears that the true consideration of the sale of the property by Mead, Waffi & Soule to the present corporation was $143,000.

"The record discloses that the head master and the two assistant head masters who received the $35,000 in cash and $40,000 in bonds, are still functioning in the same positions and are receiving, according to the prosecutor's admission in its brief, salaries at the market rate. Besides this they are receiving six per cent. interest on the $40,000 six per cent. bonds, and have also the benefit of the income of the $35,000 in cash paid them, and have three votes in the management of the corporation. The tuition fees are kept on par with those charged by other private schools carried on for profit.

"All the property owned by the prosecutor was assessed on a valuation of $86,000.

"From this assessment an appeal was taken to the county board, who affirmed the assessment, and thence an appeal was taken by the prosecutor to the state board, who, after hearing testimony on the question whether the business of the corporation was conducted for pecuniary profit or not, must have found that the prosecutor was not fundamentally philanthropic or charitable in its purpose, and was so conducted, for the board dismissed the appeal and affirmed the assessment.

"We think after reviewing and considering the testimony in the case that the state board reached a proper result.

"In order to entitle the prosecutor to an exemption from the payment of taxes on its property under section 3, subdivision 4 of chapter 296 (*Pamph. L.* 1920), it must clearly appear that the prosecutor fundamentally comes within the class of subjects enumerated in said section and is using and occupying such property for a college, school, academy or seminary, and is not conducting the same for profit.

"As we view the facts of the case the prosecutor has failed to sustain the burden resting upon it to clearly establish that it is not conducted for profit. It does not appear to be fundamentally philanthropic or charitable in its purpose.

"Much stress has been laid by counsel of the prosecutor on the fact that because the by-laws of the corporation provide that the board of the school shall be classified so that three members shall be elected in each year and that membership in the corporation entitled to vote shall be confined to parents of present or past pupils and bondholders, each bondholder having one vote irrespective of his holdings  *  *  *  and that the head masters have only three votes as individual bondbolders out of between fifty and sixty votes; that, therefore, the head master and· his two assistants have lost the absolute control and management of the affairs of the corporation, which they formerly had over the old corporation, the management and control now being practically in the hands of the parents of former and present pupils of the school without deriving any pecuniary benefit, and as a consequence such a situation necessarily excludes any theory that the prosecutor is conducted for profit. But this argument falls short of convincing us that the character of the organization is fundamentally charitable or philanthropic, as was found from the facts to be the case in *Institute of Holy Angels* v. *Bender,* 79 *N. J. L.* 34, and in *Mayor, &c., of Princeton* v. *State Board,* 96 *N. J. L.* 334, and because it clearly appeared in those cases that they were not carried on for profit, but were fundamentally philanthropic and charitable, they were held to be exempt from taxation.

"But that condition is absent from the present case. The by-laws relied on as indicating its beneficial public purpose are subject to be altered or repealed. The present case is, in its main and ·controlling features, akin to the case of the *Town of Montclair* v. *State Board of Equalization of Taxes.* 86 *N. J. L.* 497; *affirmed* in 88 *Id.* 374, where the assessment was upheld.

"The writ is dismissed and assessment is affirmed."

For the appellant, *Osborne, Cornish & Scheck.*

For the respondent, city of Orange, *William A. Calhoun.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion of the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, WHITE, HEPPEN-HEIMER, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 11.

*For reversal*—None.