No. 25,557.

THE LAWRENCE BUSINESS COLLEGE, *Appellee,* v. E. C. BUSSING, as County Clerk, A. E. HUDDLESTON, as County Treasurer, and WILL JONES, as Sheriff, all of Douglas County, *Appellants.*

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Schools—Educational Institutions—Exemptions from Taxation.* The shortness of their course, the narrow field of their instruction and the utilitarian character of their aims do not prevent schools of the type usually described as business colleges from being regarded as educational institutions within the meaning of the constitutional provision exempting from taxation property used exclusively for educational purposes.

2. SAME. Property used in conducting schools of the kind usually called business colleges, which are maintained for the financial gain of their owners, is not immune from taxation under the constitutional provision exempting property used exclusively for educational purposes.

3. SAME. Where the owners of a business college which has been in operation for some years turn its equipment over to a corporation without capital stock organized by them, and they thereafter draw salaries as officers of the corporation which absorb all of its income for a period of eight years, in an action brought by the corporation to enjoin the collection of taxes on its property on the ground that its school is not conducted for financial profit, the burden rests upon it to establish that fact clearly; and it is held that in the present case that burden was not met.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed January 10, 1925. Reversed.

*A. B. Mitchell*, of Lawrence, for the appellants.

*C. E. Lindley*, of Lawrence, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Lawrence Business College, a Kansas corporation, obtained a permanent injunction against the county clerk, treasurer and sheriff, forbidding the enforcement of personal taxes against it for 1921 and 1922, on the ground that its property is used exclusively for educational purposes within the meaning of the provision of the state constitution (art. 11, § 1) exempting from taxation property so used. The defendants appeal.

1. The plaintiff's field of instruction appears to be practically the same as that of commercial schools generally. The defendants suggest that this limited field prevents its being classed as an educational institution within the meaning of the constitutional provision. A business college has been held not to be within the protection of a statute exempting from taxation property owned by educational institutions while occupied solely for the purposes for which they were incorporated. (*Parsons Business College v. Kalamazoo*, 166 Mich. 305.) That case, however, was influenced by the history of an amendment to the statute in the light of prior decisions, and also by the fact that the principal reason for the incorporation of the school was shown to have been to avoid taxation. All organizations the purpose of which is to give instruction are in a sense educational. Doubtless some of them are not within the meaning of the word as used in exemption laws. The word education as used in an exemption law is not to be construed in accordance with expressions of opinion concerning the purposes of education in general, however sound in that connection, such, for instance, as that education is to be considered "not as a means of livelihood, but as an adornment of the spirit," and is to be exalted "not as a means of getting on in the world, but as a means of understanding and enjoying the world." (White's Woodrow Wilson, pp. 139, 140.) A business devoted to giving instruction in driving automobiles or piloting air craft does not seem to fit into the ordinary conception of an educational activity, although it may not be easy to say exactly why or just where the line should be drawn. We believe, however, a school of the type usually designated as a commercial college, notwithstand-

ing that the period of its instruction is very short, that the subjects taught are confined to a narrow field, and that its purpose is utilitarian to the last degree, is educational within the scope of that term as employed in the constitutional provision under consideration.

2. Two questions remain to be determined: (1) Does the constitutional provision referred to exempt schools which are conducted for financial profit? and (2), Is the plaintiff's school of that character? The clause in full reads:

"All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes . . . shall be exempted from taxation." (Art. 11, § 1.)

Of similar provisions it has been said:

"An exemption from taxation of the property of educational institutions is provided by the constitution or laws of most of the states. While the exact phraseology of the exemption differs in the different states, it is generally considered that the exemption of such institutions is intended to be confined to those of the same general character as the benevolent and charitable institutions with which they are associated in the statute, and that it does not extend to schools which were not established primarily for the purpose of education but for the pecuniary advantage of individuals." (26 R. C. L. 320.)

The rule is widely recognized and is followed in this state that laws exempting property from general taxation are construed strictly against the claim of immunity, which must be clearly established in order to be allowed. (37 Cyc. 891, 892; *The State v. Educational Association*, 54 Kan. 542, 38 Pac. 796.) If a paper or magazine were conducted solely for the cultivation of literature, publishing nothing except literary matter, but yielding a financial profit to its owners, it would quite obviously not be within the spirit of the constitutional exemption. And this would be true of a laboratory used exclusively in discovering chemical combinations of practical utility, the sale of rights in connection with which brought to the owners a return in dollars and cents on their investment. Probably a religious, benevolent or charitable institution cannot be reasonably conceived the real purpose of which is to make money for its owners, for this would involve a contradiction of terms. But if a concern professing to be religious, benevolent or charitable turned out to be operated for the purpose of directly enriching the operators, its plea of exemption would be given short shrift by the courts. We are not here concerned with the difference between public and private schools or between schools that charge tuition and those that do not. The distinction under consideration turns upon whether education or financial

gain is the primary purpose for the maintenance of the institution, which is the subject of the inquiry. We think where a school of the plaintiff's type is maintained as an ordinary business enterprise for the monetary advantage of its owners it is not entitled to the benefit of the constitutional exemption.

Decisions bearing explicitly upon this precise question are few, largely because of the different language of the various constitutional and statutory provisions involved. The division of authority upon the more general phases of the matter has been thus indicated:

"If an exemption from taxation is granted generally to schools or educational institutions, without requiring that they shall be public or charitable institutions, it may be claimed by a private school maintained by an individual or corporation as a business enterprise. In some states, however, it is considered that such an institution is not within the spirit of the exemption laws." (37 Cyc. 933.)

Of the decisions cited in the notes to this text only two appear ᛫ fully to cover the situation here presented. They are in favor of the exemption and are directly in point, although one of them involves a license and not a general-property tax (*Montclair Military Academy v. Assessors*, 65 N. J. L. 516), a consideration which might affect the matter of strict construction, and in the other it is not specifically stated that the school was maintained for financial gain (*City of Indianapolis v. Sturdevant*, 24 Ind. 391). Other cases of a similar effect are: *Pitcher v. Miss Wolcott School;* 63 Colo. 294; *Corporation Commission v. Construction Co.*, 160 N. C. 582; *Ward Seminary v. City Council*, 129 Tenn. 412; *Rohrbaugh v. Douglas County*, 76 Neb. 679. In the case last cited the question here involved is treated as having been settled in earlier decisions, none of which contains a full discussion of the point which is vital here. On the other hand, *Brunswick School v. Greenwich*, 88 Conn. 241, not cited in the notes referred to, has a tendency against the exemption. In a dissenting opinion in the Tennessee case above referred to it is said:

"If corporations for profit be allowed entrance into the class with corporations for public welfare, it is not improbable that, in this age of promotion, enterprises will be launched in corporate form, under the guise of educational corporations, having in view yet more patently private profit, such as business colleges." (p. 437.)

In *Home & Day School v. Detroit*, 76 Mich. 521, where a seminary was held exempt as a "scientific institution," although at one time a

three per cent dividend had been paid to stockholders, it was said in the answer:

"These defendants submit that it is not the intention of the statute to exempt from taxation institutions which, although educational, are purely commercial in their purposes; that the complainant has no greater right to claim an exemption than a business college, or school of telegraphy, or school of stenography, which is established as a purely commercial enterprise." (p. 529.)

3. Bearing in mind that one who claims the benefit of a tax exemption has the burden of affirmatively and clearly bringing himself within its operation, the question whether the plaintiff's school is to be regarded as one maintained for its financial profit turns upon the effect of an agreed statement submitted to the trial court, which shows these facts:

The Lawrence Business College has been in operation for more than fifty years. It was incorporated in 1907 without capital stock. The five incorporators constitute a board of trustees, having complete supervision of its property and general supervision of the administration of the school. A vacancy in the board of trustees is filled by the remaining members. The trustees elect three directors, one designated as president, who must be a trustee, and is also president of the board of trustees; one as superintendent, and one as adviser. If at the end of any year the school treasury has a balance of more than twenty-five per cent of the receipts for the year it is to be used to establish or increase a "permanent student loan fund," to be administered by the board of directors. W. H. Quackenbush has been president and E. S. Weatherby (also a trustee) secretary and superintendent since the incorporation. C. O. Bowman, a teacher in the school, is also a trustee. The names of the other trustees and directors are not shown and do not appear in the minutes of the annual meetings from 1913 to 1921, which are incorporated in the agreed statement. In 1917 the trustees, on recommendation of the directors, fixed the salary of President Quackenbush at $200 a month and that of Superintendent Weatherby at $166.66 a month. In 1918 these salaries were each increased to $250 and $200, respectively, and in 1919 to $350 and $300. Prior to its incorporation the school was presumably owned by Messrs. Quackenbush and Weatherby, for the equipment used by the plaintiff was donated to it by them. The receipts of the school consist of tuition paid by the students. The total receipts annually from 1914 to 1921, inclusive, with the total expenditures, and the combined

amounts paid to President Quackenbush and Superintendent Weath-
erby as salaries, were as follows:

| Year. | Total receipts. | Total expenditures | Salaries of president and superintendent. |
|---|---|---|---|
| 1914 | $6,167 | $6,691 | $1,870 |
| 1915 | 7,440 | 7,651 | 2,895 |
| 1916 | 9,565 | 9,658 | 3,163 |
| 1917 | 11,697 | 11,415 | 4,913 |
| 1918 | 19,446 | 19,628 | 7,140 |
| 1919 | 19,030 | 19,104 | 5,676 |
| 1920 | 17,272 | 20,679 | 5,252 |
| 1921 | 13,716 | 12,908 | 2,458 |

It will be observed that the payments to the officers referred to
vary with the amount collected for tuition, although not in an exact
proportion. The expenditures exceeded the income in every year
excepting 1917 and 1921, and the expenses for the eight years exceed
the receipts by $3,407. It is not shown what motives led to the in-
corporation. Its practical effect seems to be that, whereas formerly
any excess of receipts over expenses went to Messrs. Quackenbush
and Weatherby as profits of the business, it now goes to them as
their salaries, or to apply on their salaries. We think, as was said in
*Carteret Academy v. State Board of Taxes and Assessment*, 120
Atl. 736 (N. J.), the plaintiff "has failed to sustain the burden resting
upon it to clearly establish that it is not conducted for profit."

The judgment is reversed and the cause is remanded with direc-
tions to deny the injunction.