No. 26,048.

The Nuns of the Third Order of St. Dominic, *Appellant,* v. C..F. Younkin, as County Clerk, and W. P. White, as County Treasurer of Barton County, *Appellees.*

SYLLABUS BY THE COURT.

1. Hospitals—*Charitable Purpose—How Determined.* The test which determines whether a hospital is charitable is whether it is maintained for gain or profit.

2. Taxation — *Exemption — Charitable Institutions.* A hospital owned and managed by a corporation organized for benevolent purposes, which has no capital stock, declares no dividends and has earned none, and which devotes all its income to the care of persons sick or injured, and in improving and extending its facilities for so doing, and which receives and cares for patients without discrimination as to their race, creed or wealth, is a charity, and its property used directly and solely for that purpose is used exclusively for charitable purposes, within the meaning of our constitution, art. 11, § 1.

Appeal from Barton district court; Leroy E. Quinlon, judge. Opinion filed May 9, 1925. Reversed.

*S. B. Amidon, S. A. Buckland, H. W. Hart, Glenn Porter,* all of Wichita, and *R. C. Russell,* of Great Bend, for the appellant.

*B. H. Asher,* county attorney, *D. A. Banta, William Osmond, Elrick C. Cole,* and *T. B. Kelley,* all of Great Bend, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is a suit to enjoin the county officials of Barton county from levying and collecting taxes upon a hospital at Great Bend owned by plaintiff. It was tried to the court, in part on an agreed statement of facts and in part upon evidence taken. The court made findings of fact and rendered judgment for defendant, and plaintiff has appealed.

The findings of fact are as follows:

"The plaintiff in this case was organized on the 11th day of June, 1902, for the purpose of: 'The support of a benevolent, charitable and educational undertaking; it being the intention of said organization to acquire by purchase or gift, real estate at or near the city of Great Bend, Barton county, Kansas, and at other points within the diocese of Wichita, and to maintain or erect upon such real estate suitable buildings for the purpose of carrying on a school or seminary, establishing and maintaining a hospital and engaging in general charitable work.' And was granted a charter by the state of Kansas for the purposes therein contained.

"No capital stock was ever issued and no dividends were ever paid or earned upon this capital stock. When the plaintiff was first organized it acquired and occupied a small frame building on a site near the place where the present hospital is maintained and where they were able to care for not to exceed four patients. As time went on their facilities for the caring of the sick enlarged until about two years ago they erected on the south half of block 54, College Grove addition to the city of Great Bend, Kansas, a modern hospital building with the capacity of fifty beds in which there was also installed a laboratory, operating room, and the facilities required by the American College of Surgeons to be maintained by a hospital before that hospital is accredited by such college of surgeons.

"The laboratory is in charge of a certified technician who is a person skilled in conducting scientific examinations and experiments. In the operating room there are all the instruments necessary in the successful performance of operations of all kinds by skilled and scientific surgeons. In the X-ray room a modern X-ray apparatus was installed about a year ago, in which other surgical experiments and research tests are carried on by those skilled in that matter.

"There is also maintained in this hospital a training school for graduate nurses. They live in the building occupied by the hospital, are boarded free of charge, pay no tuition, and receive instructions from the superintendent of nurses, as well as from reputable doctors practicing at the hospital who lecture to them each evening in the classroom maintained in the hospital building for that purpose, and who upon their graduation are permitted to practice as graduate nurses. Students of Protestant as well as Catholic faith are received in this school without discrimination. In another part of the hospital building is a chapel for the purpose of holding religious services and where religious services are conducted.

"The hospital building together with the equipment was erected at a cost to plaintiff of more than two hundred thousand dollars, and at this time plaintiff is indebted upon said building and the maintenance thereof in excess of the sum of one hundred thirty thousand dollars. The original indebtedness was decreased to the present level by the earnings of pay patients and by legacies left to the plaintiff corporation.

"In the hospital building there are engaged in different departments twenty or more nurses who are nuns of the plaintiff order. These nuns are in addition to those in the training school. Some of them are engaged in the laundry, others in the kitchen, one in the office, the superintendent of nurses in charge of the training school and the remainder in the general nursing of the sick, care of the rooms and other duties. None of these receive compensation of any kind or character for their work except board, clothing and lodging. Upon becoming members of the order they convey an absolute title to all of their property of every kind to said order and bind themselves to engage in educational work, and in caring for the sick and injured during the remainder of their lives. All of these nurses occupy rooms in the hospital building.

"The hospital building and the grounds upon which the same is situated is devoted exclusively to the following purposes:

"First, The rooms for the patients occupying the hospital. Second, The laboratory, operating room, X-ray room and equipment devoted to scientific

research, tests and experiments conducted in connection with the hospital. Third, To the education of graduate nurses and the rooms occupied by said student nurses during their term of school, being a three-year term. Fourth, To the rooms occupied by other nurses and members of plaintiff order in maintaining the institution. Fifth, To the chapel in which religious services are conducted.

"All sick or injured persons not suffering from contagious diseases who seek admission at plaintiff hospital are received, boarded, nursed and cared for so long as they need such attention without reference to their creed, race or financial condition, and are treated alike except that those able to pay receive the more desirable rooms provided they desire the same.

"The schedule of rooms runs from fourteen dollars to thirty-five dollars a week, the fourteen-dollar rate being applied to wards containing four beds and the thirty-five dollar rate being for a room with bath and toilet facilities.

"A number of patients are also treated by the plaintiff who are public charges and are sent to the institution by the board of county commissioners of Barton county, and are known as county patients. Under an agreement between the plaintiff and Barton county, Kansas, these county patients are received at the institution and the county held responsible and agreeing to pay ten dollars a week for each patient with the further agreement that in case the operating room is used an additional fee of ten dollars for a major operation and five dollars for a minor operation and the actual cost of such gauze and dressings as are used would be paid by the county.

"All patients received at the hospital are charged on the books of the plaintiff with the full amount of the services rendered to them, and the evidence disclosed that in the case of county patients the difference between the full charge for the services performed and the amount paid to plaintiff by the county was carried on the books of the plaintiff as charitable work, and this difference denominated charity amounted to something over two thousand dollars for the past year. The total amount of money received by the hospital was about thirty-two thousand dollars for the past year.

"There was no evidence introduced to establish the fact that the plaintiff had ever received a patient at its hospital with the understanding at the time it received such patient that the care and treatment would be given without pay except to relatives of the sisters of the order and sisters of other orders and the clergy who receive services at said hospital without charge.

"The evidence further established the fact that the actual cost of maintaining a patient in the hospital is between $3.92 and $3.98 per day. All moneys which have been received by the plaintiff either by gifts, legacies or from moneys received from patients have been used in maintaining the hospital and to pay interest and indebtedness and, figuring depreciation on the building and equipment, there has been no surplus earned over and above the cost of maintenance.

"The hospital is recognized by the federal government as a scientific and charitable institution and as such is permitted to withdraw alcohol from the bonded warehouse free of all tax. The plaintiff was also excused from making an income tax return to the collector of internal revenue.

"Aside from the hospital property in suit the plaintiff owns and maintains

a school in a separate property and also owns other valuable property near the site of the hospital which, aside from the school, consists of about fifty acres of ground in the city of Great Bend.

"The plaintiff pays general and special taxes on all of its property except the school property, and this action was commenced to enjoin the collection of such taxes on the hospital property."

The sole question before us is whether the property of plaintiff is exempt from taxation as being used exclusively for charitable purposes. Our constitution provides:

"The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars ($200) for each family, shall be exempted from taxation." (Art. 11, § 1.)

The statute in more detail makes similar provision for the exemption of property from taxation. (R. S. 79-201.) The obligation of a citizen to pay taxes has been said to be coextensive with the protection he receives from the state, more accurately in accordance with his ability to pay. (Gray, Limitation of Taxing Power, p. 12.) An exemption from taxation is a release from this obligation and is an exception to the rule, and those who claim under the exception must show themselves clearly to be within its terms; hence, a provision creating an exemption from taxation must be strictly construed. The use of the property at the time in question is the test of exemption. As applied to charitable purposes, these provisions exempt from taxation only such property as is used exclusively, directly and immediately in dispensing charity. These principles have been clearly established and applied by previous decisions of this court. (*Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344; *Vail v. Beach,* 10 Kan. 214; *St. Marys College v. Crowl,* 10 Kan. 442; *Stahl v. Educational Assoc'n,* 54 Kan. 542, 38 Pac. 796; *National Council v. Shawnee County,* 63 Kan. 799, 66 Pac. 1011; *Masonic Home v. Sedgwick County,* 81 Kan. 859, 106 Pac. 1082; *Odd Fellows v. Spaeth,* 81 Kan. 894, 106 Pac. 1077; *Mason v. Zimmerman,* 81 Kan. 799, 106 Pac. 1005; *Ottawa University v. Stratton,* 85 Kan. 246, 116 Pac. 892; *Griswold v. Quinn,* 97 Kan. 611, 156 Pac. 761; *Gray v. Craig,* 103 Kan. 100, 172 Pac. 288.)

In *Mason v. Zimmerman,* supra, it was held:

"'Charity' is a gift to promote the welfare of others in need, and 'charitable,' as used in such constitutional and statutory provisions, means intended for charity, and 'benevolent' is, as used therein, entirely synonymous with 'charitable'." (Syl. ¶ 2.)

In 11 C. J., it is said:

"The word 'charity' has a well-known and acknowledged meaning, broad enough to include every gift for a general public use. Indeed, the word has been shortly and tersely defined as a gift to a general public use which extends to the poor as well as to the rich. A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." (p. 299.)

"Gifts for the purpose of establishing or maintaining hospitals, asylums, public homes, or like institutions for the benefit of the sick, injured, aged, infirm, insane, needy, homeless, friendless, or other persons in unfortunate circumstances, are for a purpose recognized by the courts as charitable. A gift for such a purpose is not invalid as a public charity because it does not impose poverty as a condition to the receipt of its benefit, or because the inmates are expected to have some means and to contribute to its support and development." (p. 315.)

In *Buchanan v. Kennard*, 234 Mo. 117, 139, it was said:

"But a person who is sick, injured, or afflicted, or in a helpless condition, is none the less a proper object to be included in the purpose of a public charity, although he may not be poor."

Speaking of hospitals as charitable institutions, it is said, in 30 C. J. 462:

"The test which determines whether a hospital is charitable or otherwise is its purpose; that is, whether it is maintained for gain, profit, or advantage, or not. . . . Where a hospital can otherwise be classed as a charitable institution, the fact that patients who are able to pay are required to do so does not deprive it of its charitable character. Neither does the fact that the county pays for such services rendered to those who are a legal county charge."

If a hospital is conducted for the use and profit of persons engaged in the practice of medicine and surgery (*City of Knoxville v. Ft. Sanders Hospital*, 148 Tenn. 699; *Mayor and Aldermen v. Vicksburg Sanitarium,* 117 Miss. 709), or as an adjunct to a medical college conducted for the profit of its owners (*Gray Street Infirmary v. City of Louisville*, 23 Ky. L. R. 1274), it cannot be regarded as a charitable institution, and is subject to taxation. This is in accord with our holding concerning business colleges in the case of *Lawrence Business College v. Douglas County*, 117 Kan. 436, 231 Pac. 1039.

When an institution is incorporated for benevolent purposes without capital stock and no dividends are declared or paid, and con-

ducts a hospital, and all the earnings of the hospital from pay patients, all gifts, devises, bequests, or income from whatever source, are used in the maintenance, extension and improvement of the hospital, and which admits patients without regard to race, creed, or wealth, it is uniformly held that such hospital is conducted exclusively for charitable purposes. (*McDonald v. Massachusetts General Hospital*, 120 Mass. 432; *New England Sanitarium v. Stoneham*, 205 Mass. 335; *Sisters of St. Francis v. Bd. of Review*, 231 Ill. 317; *German Hospital v. Bd. of Review*, 233 Ill. 246; *Sisters of Charity v. Township of Chatham*, 52 N. J. L. 373; *O'Brien v. Hospital Assn.*, 96 Ohio St. 1; *Hospital Association v. Baker*, 40 S. D. 226; *St. Joseph's Hospital Association v. Ashland County and Others*, 96 Wis. 636; *Phila. Appellant v. Penna. Hospital*, 154 Pa. St. 9; *State, ex rel., v. Board of Assessors*, 52 La. 223; *Hospital v. County Court*, 78 W. Va. 685; *State, ex rel., v. Powers*, 10 Mo. App. 263 [opinion adopted by supreme court], 74 Mo. 476; *Philadelphia v. Pennsylvania Hospital*, 8 Pa. C. C. R. 72; *Santa Rosa Infirmary v. City of San Antonio*, 259 S. W. 926 [reversing Texas court of appeals, 249 S. W. 498]; *City of Dayton v. Trustees of Speer's Hospital*, 165 Ky. 56; *St. Elizabeth Hospital v. Lancaster County*, 109 Neb. 104; *Bishop and Chapter v. Treasurer*, 37 Colo. 378; see, also, note 34 A. L. R. 634, 648.)

The fact that it charges and receives pay for patients able to pay, does not detract from the charitable nature of the service rendered. In *Hospital Association v. Baker*, supra, 95 per cent of the patients were pay patients. In *City of San Antonio v. Santa Rosa Infirmary*, supra, 87½ per cent were pay patients. In *St. Elizabeth Hospital v. Lancaster County*, supra, only a small per cent did not pay. In *Hospital v. County Court*, supra, about 40 per cent paid. Neither does the fact that the hospital has been able to increase the value of the plant from money received from pay patients and donations detract from its charitable purposes. The St. Elizabeth Hospital at Lincoln, Neb., began with donations aggregating about $20,000, and in thirty years increased the value of its property to about $500,000. (*St. Elizabeth Hospital v. Lancaster County*, supra.) The Santa Rosa Infirmary of San Antonio was able to pay an indebtedness of $125,000 in about three years. (*Santa Rosa Infirmary v. City of San Antonio*, supra.)

If these incomes from pay patients and donations are used for the purpose of caring for or relieving the sick or disabled and in-

creasing the facility of the institution for that purpose, and are not used for the purpose of declaring dividends or the financial profit (other than the paying of necessary operating expenses) of those connected with or having charge of the institution, such use is simply an extended use for charitable purposes. (See cases above cited.)

It is argued by appellees, rather inferentially, that quite a large amount of other property, principally real estate, has been acquired by the appellant from the proceeds of this institution, which other property is not needed nor used directly and immediately in the conduct of the hospital, and that this is tantamount to declaring dividends. This suggests an interesting question, but we are precluded from giving it any force in this case by the stipulation of the parties and the finding of the court that no dividends were ever paid or earned, and that all moneys received by plaintiff, either by gifts, legacies, or from pay patients, have been used in maintaining the hospital and to pay interest and indebtedness thereon.

From the findings of the trial court it is clear, in the light of these authorities, that the property of the plaintiff used directly and solely for hospital purposes is used exclusively for charitable purposes, within the meaning of article 11, section 1, of our constitution.

The judgment of the court below will be reversed, with directions to enter judgment for plaintiff.