(No. 5023.   December 8, 1928.)

J. M. BISTLINE, et al., Appellants, v. C. H. BASSETT, et al., Constituting Board of Equalization, Bannock County, Respondents.

[272 Pac. 696.]

F. M. Bistline, for Appellants.

L. E. Glennon, J. H. Peterson and H. J. Swanson, for Respondents.

HARTSON, District Judge.—Appellants, who are residents and taxpayers of Bannock county, instituted this proceeding by petition addressed to the county commissioners sitting as a board of equalization, asking that certain real estate, with the improvements, furniture, fixtures and equipment, be placed upon the tax-rolls for 1925 and preceding years. The board denied the petition. Appeal was taken to the district court where the order was affirmed and the appeal dismissed. This appeal is from the judgment.

The property is a two-story brick building with contents in the city of Pocatello. It is occupied by Lynn Brothers Benevolent Hospital. In 1919, a corporation named Lynn Brothers Hospital was organized, capital $15,000, divided into 15,000 shares of $1.00 par value. Drs. I. W. Lynn and

J. H. Lynn own and hold all but three shares. There are five directors, three of whom are Dr. and Mrs. I. W. Lynn and J. H. Lynn. The corporate object, as expressed in the articles, was to conduct "a general hospital and training school for nurses." In 1920, Lynn Brothers Hospital received title to the property. Equipment was provided for a hospital of 40 beds. On April 9, 1925, Lynn Brothers Benevolent Hospital, a benevolent association, was incorporated, without stock. Interest is evidenced by memberships, only four of which have been issued. The members are Dr. and Mrs. I. W. Lynn, J. H. Lynn and R. W. Mulica. The first three are the officers. The Doctors Lynn and R. W. Mulica are the directors. The expressed objects are similar to, if somewhat broader than that of Lynn Brothers Hospital, but "pecuniary profit is not the object. . . . . " On April 30, 1925, Lynn Brothers Hospital conveyed the property to Lynn Brothers Benevolent Hospital.

The witness R. D. Leach, accountant, testified from examination of books of the hospital that, as a unit, it was not profitable or self-sustaining during 1924, 1925, but that there was a deficit in operating expenses. He produced his written report from which, and his testimony, it appears that total income, cash and charge accounts, in 1924, was $64,510.39 and in 1925 was $59,881.59. These figures, however, include personal calls, clinic, obstetrics, surgery and other items not properly chargeable to expense of the hospital, because they are income from Lynn Brothers' professional services. The Lynns, as will further appear, use the hospital and equipment in their private practice. They operate their own business and that of the hospital together. Eliminating such items, income of the hospital for 1924, 1925 is $25,444.69 and $23,147.50, respectively. Deficits were paid by the Lynns out of a bank account common to themselves and the hospital. No books or accounts are kept by the Lynns separately from those of the hospital. All hospital bills and fees of the Lynns are paid out of cash, and the remainder deposited in the bank account. No rent is charged or paid by the Lynns. The room rate for pa-

tients averages $35 per week. All are charged for hospital services and collections made where possible. Two store-rooms on the ground floor are rented from time to time. Five or six automobiles are in use, one as an ambulance, another for the collector, and the others by the Lynns personally. About $1,200 was spent in advertising the hospital.

Dr. I. W. Lynn testified, in part, that he and his brother are in charge. No discrimination is made between patients. Many charity patients are received. The wives of the doctors have at times worked without charge. The object of Lynn Brothers Hospital and Lynn Brothers Benevolent Hospital was to operate without hope of gain for benevolent purposes. The Lynns have derived no profit from the hospital, never hope to, and he knows they never will. There has been no endowment from outside sources. There are no members other than the original incorporators. He and his brother practice at the hospital, have all their patients there, and maintain no other offices. Any outside physician may bring patients, but none is actually treated by other doctors except incidentally as assistants. The Lynns give the hospital about one-third of what they make, but they lose on the hospital. All money received for professional services, not expended for hospital bills, belongs to them, and they do what they want with it. As to operations, they make charges customary among other physicians and surgeons.

The trial court found that the hospital is used for benevolent purposes, and no profit is derived therefrom.

Numerous errors are assigned, but we need discuss only that relating to insufficiency of the evidence to support the findings. There is no conflict in the evidence.

The claim of exemption from taxation must be justified, if at all, by the terms of C. S., sec. 3099, the material part of which reads as follows:

"The following property is exempt from taxation: . . . .

"Hospitals, with their furniture and equipment, used for

benevolent purposes, with the ground appurtenant thereto and used therewith, from which no profit is derived.''

It will be observed that the exemption depends solely upon the use of the property, and not upon the ownership, nor the character, charitable or otherwise, of the owner. It is purely a property exemption. Language of exemption statutes must be given its ordinary meaning. (*City of Pasadena v. Los Angeles County,* 182 Cal. 171, 187 Pac. 418; *People v. Deutsche Evangelisch, etc.,* 249 Ill. 132, 94 N. E. 162.)

Exemptions are never presumed. The burden is on a claimant to establish clearly a right to exemption. An alleged grant of exemption will be strictly construed. It must be in terms so specific and certain as to leave no room for doubt. (*Salisbury v. Lane,* 7 Ida. 370, 63 Pac. 383; *Kootenai County v. Seven-Seven Co.,* 32 Ida. 301, 182 Pac. 529; Cooley, Taxation, 4th ed., p. 1404.) An exemption claim cannot be sustained unless it is shown to be within the spirit as well as the letter of the law. (*Filippe A. Broadbent Mantel Co. v. City of Baltimore,* 134 Md. 90, 106 Atl. 250.) Where use is the criterion, the exemption is lost if the property is appropriated to other uses. (Cooley, Taxation, 4th ed., pp. 1427, 1428.) To ascertain whether the property of a corporation falls within an exemption statute, exempting from taxation hospitals used for benevolent purposes, from which no profit is derived, it must not only be judged by its declared objects, but also by what use is actually made of the hospital. (See *Catholic Woman's Club v. City of Green Bay,* 180 Wis. 102, 192 N. W. 479.)

Our statute expresses no distinction between private and public hospitals. A ''hospital'' is defined as ''an institution for the reception and care of the sick, wounded, infirm or aged persons; generally incorporated, and then of the class of corporations called 'eleemosynary' or 'charitable.' '' (1 Bouvier's Law Dictionary, p. 1459; Black's Law Dictionary, p. 580; *City of Vicksburg v. Vicksburg Sanitorium,* 117 Miss. 709, 78 So. 702; *In re Curtiss' Estate,* 7 N. Y. Supp. 207.) ''Benevolent'' is a word of wide

range, depending upon the context in which it is used. It is a word of broader meaning than "charity," but is frequently used as synonymous with "charity." (7 C. J. 1140, 1141.) Whatever may be its relative meaning, however, it contemplates the conferring of benefits as distinguished from the making of profits. (*Summunduwot Lodge No. 3, I. O. O. F., v. Spaeth*, 81 Kan. 894, 106 Pac. 1077; *Mason v. Zimmerman*, 81 Kan. 799, 106 Pac. 1005; *Lawrence Business College v. Bussing*, 117 Kan. 436, 231 Pac. 1039; *Young Men's Protestant Temperance & Ben. Soc. v. City of Fall River*, 160 Mass. 409, 36 N. E. 57; *St. Joseph's Hospital Association v. Ashland County*, 96 Wis. 636, 72 N. W. 43; 7 C. J. 1140; see, also, Century Dictionary.) But if there still remain any doubt as to the legislative intent, as excluding private gain or aggrandizement, it is removed by the last clause of the statute, "from which no profit is derived."

The fact, if true, that no profit is made by Lynn Brothers Benevolent Hospital, as such, is immaterial, if a profit be in fact derived. The exemption is lost if profit is derived from the hospital, whether the profit be derived by the association or corporation in whom the title lies, or by others who may use its facilities for their own purposes. Such result may not be avoided by placing title in a corporation whose expressed object is to make no pecuniary profit. We do not mean, nor hold, that an incidental use of the hospital, as in the treatment of patients therein by visiting physicians, for compensation, is such use as to defeat the exemption. But where a dominant and substantial use is pecuniary advantage to individuals who have the hospital under their management and control, it is not a use for benevolent purposes, or without profit, within the meaning of the statute.

Under the circumstances of this case, unless the property is a hospital, used for benevolent purposes, from which no profit is derived, the exemption does not apply. Whether the clause "from which no profit is derived" refers to the hospital or to the use is immaterial here. In either case,

if a profit is derived, there is no exemption. The hospital, as well as the use, means a benevolent work, not an exploiting as a business proposition. The word, "use" has no different meaning, it would appear, than the words "actual use" or even "exclusive use." The legislature did not mean to extend the exemption to permanent occupancy or use, in whole or in any substantial part, for business or nonbenevolent purposes. Such construction will not prevent exemption notwithstanding occasional or incidental use for other purposes not inconsistent with that of the benevolence. (*Washington Camp, etc., v. Board of Equalization,* 87 N. J. L. 53, 93 Atl. 856.)

If it be conceded that the Lynn Brothers Benevolent Hospital is used for the commendable purpose of administering to the sick, an altogether meritorious work, it is also used for the private practice and profit of the Lynns, which, from the report of their own accountant, for the years 1924, 1925, was between $20,000 and $30,000 per annum, subject to uncollectible accounts. It therefore is not a hospital "from which no profit is derived," and consequently is not exempt from taxation. (*Elks Theatre Co. v. City of New Iberia,* 143 La. 162, 78 So. 433.) Other cases whose reasoning is applicable are: *City of Vicksburg v. Vicksburg Sanitorium, supra; Lawrence Business College v. Bussing, supra; Brunswick School, Inc., v. Town and Burrough of Greenwich,* 88 Conn. 241, 90 Atl. 801; *Rast v. Hulvey,* 77 Fla. 74, 80 So. 750; *Nuns of Third Order of St. Dominic v. Younkin,* 118 Kan. 554, 235 Pac. 869; *Gray Street Infirmary v. City of Louisville,* 23 Ky. Law 1274, 65 S. W. 11, 55 L. R. A. 270; *Sheren v. Mendenhall,* 23 Minn. 92; *Town of Montclair v. State Board of Equalization,* 86 N. J. L. 497, 92 Atl. 270; *Town of Montclair v. State Board of Equalization of Taxes,* 88 N. J. Law, 374, 96 Atl. 44; *Carteret Academy v. State Board of Taxes and Assessment,* 98 N. J. Law, 868, 120 Atl. 736; *City of Knoxville v. Ft. Sanders Hospital,* 148 Tenn. 699, 257 S. W. 408; *Red v. Johnson,* 53 Tex. 284; *Edmonds v. City of San Antonio,* 14 Tex. Civ. App. 155, 36 S. W. 495; *City of Houston v.*

*Scottish Rite Benev. Assn.*, 111 Tex. 191, 230 S. W. 978; *City of San Antonio v. Santa Rosa Infirmary* (Tex. Civ. App.), 249 S. W. 498; Id.; (Tex. Com. App.), 259 S. W. 926; note, 19 L. R. A. 289; note, 50 L. R. A., N. S., 1197.)

The judgment is reversed, and the cause remanded with directions to enter judgment in accordance with this opinion.

Costs to appellants.

Wm. E. Lee, C. J., and Budge, Givens, and Taylor, JJ., concur.

Petitions for rehearing denied.