Taft, J.,
 

 dissenting. The facts in this case as supported by the record and the findings of the Board of Tax Appeals thereon, were stated by the board as follows:
 

 “The institution is incorporated not for profit.
 

 “In all matters and things save in two respects the property of this institution and its manner of use and operation is comparable to other exempted hospital property and would be entitled to the same privilege of exemption.
 

 “Instead of reciting all of the facts we deem it wise to fully set forth wherein the properties’ use differs from other hospitals. This institution encountered financial obstacles in attempting to secure funds to purchase its present site, remodel the building thereon and for its equipment. The osteopathic fraternity of Cleveland and vicinity sponsoring its aims, when banks and other financial institutions refused to advance funds, by donations and personal loans to it, provided the funds to make the institution possible. In order that these loans might be repaid
 
 *230
 
 and supply house credits extended be liquidated, this fraternity devised the plan of employing some of its doctor members upon a monthly salary averaging $1,000 a month. All services rendered by them within and without the hospital were and are paid for directly to the hospital. These doctors make no independent charge therefor. The hospital receives all the earnings they produce. They have, in fact, retired from private practice. This plan has worked to the extent that the hospital’s operation for the year 1948 shows a net profit of $111,007.06. It is evidenced that the first six months of 1949 show comparable earnings. These earnings are being used to liquidate the institution’s construction and equipment indebtedness.
 

 “The evidence produces another fact that the applicant intends to pursue this policy after these debts are paid for the purpose of providing funds for further enlargement and betterment of its hospital facilities.
 

 “It is clear, from the statement made of the facts unhesitatingly disclosed, that although this property is in part used for the dispensing of charity, it is being so used as to produce a profit from its operation and that the income or earnings are being used in freeing the institution of debt. ’ ’
 

 The record further shows, without dispute, that the arrangement made with these doctors (herein referred to as the doctors) clearly represented a great financial sacrifice by them.
 

 As the Board of Tax Appeals stated, if this arrangement had not been made so that appellant’s receipts exceeded its expenditures in 1948, the board would have found appellant entitled to tax exemption.
 

 As shown by the figures in the statement of facts prepared by the majority and recognized by the statements in the majority opinion, the doctors, instead of receiving $182,000 during the year for their services,
 
 *231
 
 received only $81,000. This difference of $101,000 obviously represents the contribution to the hospital of their services to the extent of that dollar amount.
 

 Heretofore, this court has always recognized that the mere fact, that a profit is realized from the operations of an enterprise, does not mean that such enterprise is not operating exclusively for charitable purposes if such profit is devoted to the charitable purposes of the enterprises.
 
 American Issue Publishing Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 137 Ohio St., 264, 28 N. E. (2d), 613;
 
 Cullen
 
 v.
 
 Schmit,
 
 139 Ohio St., 194, 39 N. E. (2d), 146;
 
 Am. Jersey Cattle Club
 
 v.
 
 Glander, Tax Commr.,
 
 152 Ohio St., 506, 513. See
 
 O’Brien, Treas.,
 
 v.
 
 Physician’s Hospital,
 
 96 Ohio St., 1, 116 N. E., 975, L. R. A. 1917F, 741 (syllabus five);
 
 Taylor, Admr.,
 
 v.
 
 Protestant Hospital Assn.,
 
 85 Ohio St., 90, 99, 96 N. E., 1089, 39 L. R. A. (N. S.), 427.
 

 This conclusion was clearly recognized by the General Assembly in its enactment of Section 5328-la, General Code, in 1945, at the time when it amended Section 5353, General Code.
 

 Authorities outside Ohio uniformly sustain this conclusion.
 
 Nuns of Third Order of St. Dominic
 
 v.
 
 Younkin, Clerk,
 
 118 Kan., 554, 235 P., 869;
 
 Baylor University
 
 v.
 
 Boyd
 
 (Texas Civil Appeals), 18 S. W. (2d), 700;
 
 Butterworth et al., Exrs.,
 
 v.
 
 Keeler,
 
 219 N. Y., 446, 114 N. E., 803;
 
 In re Estate of Rust,
 
 168 Wash., 344, 12 P. (2d), 396;
 
 Virginia Masonic Hospital Assn. v. Larson,
 
 9 Wash. (2d), 284, 114 P. (2d), 976;
 
 Weiss
 
 v.
 
 Swedish Hospital,
 
 16 Wash. (2d), 446, 133 P. (2d), 978;
 
 In re Estate of Bailey,
 
 19 Cal. App. (2d), 135, 65 P. (2d), 102;
 
 New England Sanitarium
 
 v.
 
 Stoneham,
 
 205 Mass., 335, 91 N. E., 385;
 
 Bd. of Commrs. of Tulsa County
 
 v.
 
 Sisters of the Sorrowful Mother,
 
 141 Okla., 32, 283 P., 984. See, also, 51 American Jurisprudence, 608, Section 638; 3 Scott on Trusts, 2033, Sec
 
 *232
 
 tion 376, 14 Corpus Juris Secundum, 423, 424, Section 2.
 

 None of the cases cited in the majority opinion tends to support a contrary conclusion. In
 
 Incorporated Trustees of the Gospel Workers Society
 
 v.
 
 Evatt, Tax Commr.,
 
 140 Ohio St., 185, 42 N. E. (2d), 900, it was held that the use of the premises for living quarters was the factor which prevented tax exemption. In
 
 Zindorf
 
 v.
 
 Otterbein Press,
 
 138 Ohio St., 287, 34 N. E. (2d), 748;
 
 Benj. Rose Inst.
 
 v.
 
 Myers, Treas.,
 
 92 Ohio St., 252, 110 N. E., 924, L. R. A. 1916D, 1170; and
 
 Battelle Memorial Institute
 
 v.
 
 Dunn,
 
 148 Ohio St., 53, 73 N. E. (2d), 88, tax exemptions were denied because of uses of the property involved for commercial purposes. The tax exemption sought in
 
 New Orphans’ Asylum of Colored Children of Cincinnati
 
 v.
 
 Bd. of Tax Appeals,
 
 150 Ohio St., 219, 80 N. E. (2d), 761, was allowed. In
 
 Trust Co. of Georgia
 
 v.
 
 Williams,
 
 184 Ga., 706, 192 S. E., 913, unlike the instant case, the hospital was to be open only to those who paid for its services.
 
 Hamilton
 
 v.
 
 Corvallis Genl. Hospital Assn.,
 
 146 Ore., 168, 30 P. (2d), 9;
 
 Prairie du Chien Sanitarium Co. v. City of Prairie du Chien,
 
 242 Wis., 262, 7 N. W. (2d), 832, 144 A. L. R., 1480, and the underlined portions, quoted in the majority opinion from Comment b, under 2 Restatement of Trusts, 1167, Section 376, involved situations where the hospital or other institution was used as a device to provide profit for its members or promoters. This is the reverse of the instant case where the promoters (the doctors) are used by the hospital to provide funds for its charitable operations.
 

 It is submitted that the more nearly applicable portion of the Restatement is the subsequent Comment d following the Comment b quoted in the majority opinion. Such Comment d reads in part:
 

 
 *233
 

 “A
 
 charitable trust does not cease to be such merely because its operation results in a profit, provided that the profits are to be applied only to charitable purposes. It is only when the profits may be applied to private purposes that the trust ceases to be charitable. The trust is charitable whether the profits are to be used for the purposes of the undertaking producing the profits or for other charitable purposes.”
 

 The majority opinion seems to have overlooked that there is a sound legislative reason for granting tax exemption to “property belonging to institutions used exclusively for charitable purposes.” The words “charitable purposes” are usually understood to include those purposes, the accomplishment of which is beneficial to the community.
 
 Cleveland Bible College
 
 v.
 
 Board of Tax Appeals,
 
 151 Ohio St., 258, 264, 85 N. E. (2d), 284;
 
 Waddell, a Minor,
 
 v.
 
 Y. W. C. A.,
 
 133 Ohio St., 601, 604, 15 N. E. (2d), 140; 2 Restatement of Trusts, Section 368 and Comment b thereon. When it provides for their tax exemption, the General Assembly merely recognizes in a small way the obligation which the state owes to institutions devoted to charitable purposes. 51 American Jurisprudence, 510, Section 504;
 
 Cedars of Lebanon Hospital
 
 v.
 
 Los Angeles County
 
 (Cal. Dist. Ct. of App.), 206 P. (2d), 915;
 
 Myers, Treas.,
 
 v.
 
 Benjamin Rose Institute,
 
 92 Ohio St., 238, 251, 110 N. E., 929.
 

 It might well be argued that, as to hospitals in this state not used as devices to provide profits for stockholders or other individuals, they are of sufficient benefit to the community to justify their treatment as charitable institutions, even if (as they are not in the instant case) all patients are required to pay for the services received from such hospitals.
 
 Weiss
 
 v.
 
 Swedish Hospital, supra,
 
 at 451. This is especially true in Ohio where most communities are sorely in need of adequate or even some hospital accommodations.
 

 
 *234
 
 In the instant case, if, instead of devoting over $100,-000 of their services to the hospital in 1948 and thereby enabling the hospital to have snch an excess of receipts from operations over disbursements, these doctors had contributed that sum in money as a gift to the hospital, no question of its tax exemption could have been raised without specifically overruling previous decisions of this court.
 
 O’Brien, Treas.,
 
 v.
 
 Physician’s Hospital, supra; College Preparatory School for Girls
 
 v.
 
 Evatt, Tax Comonr.,
 
 144 Ohio St., 408, 59 N. E. (2d), 142;
 
 Taylor, Admr.,
 
 v.
 
 Protestant Hospital Assn., supra.
 
 The interest of the community in having such a hospital is just as great where donations in cash are not available as where they are. That interest is the interest which justifies classification, of the hospital as a charity and enables it to secure the tax exemption provided by the General Assembly.
 

 No institution, even a charitable one, can operate at a loss indefinitely. Where cash donations are not available to make up for operating losses, the need of tax exemption is greater than where such donations are available. The mere facts, that a hospital is operated efficiently within its income and supported in part by donations of services instead of cash, should not prevent it from receiving tax exemption. Any distinction between donations of money and donations of services would appear to be a distinction without a difference.
 

 Hart and Stewart, JJ., concur in the foregoing dissenting opinion.