HENRY F. MASON *et al.*, *Appellees*, v. SAMUEL ZIM-MERMAN *et al.*, *Appellants*.

No. 16,356.   .

SYLLABUS BY THE COURT.

1. TAXATION — *Exemption* — *Statutory Construction*—*Property Used Exclusively for Benevolent and Charitable Purposes.* The provision of section 1 of article 11 of the constitution of Kansas that "all property used exclusively for . . . benevolent and charitable purposes . . . shall be exempt from taxation" should be strictly construed, as should the similar provision of section 2 of chapter 408 of the Laws of 1907.  So construed, these provisions exempt from taxation only such property as is used exclusively, directly and immediately in dispensing charity.

2. WORDS AND PHRASES — *"Charity"* — *"Charitable"* — *"Benevolent."*  "Charity" is a gift to promote the welfare of others in need, and "charitable," as used in such constitutional and statutory provisions, means intended for charity, and "benevolent" is, as used therein, entirely synonymous with "charitable."

Appeal from Shawnee district court; ALSTON W. DANA, judge.  Opinion filed February 12, 1910.  Reversed.

STATEMENT.

ON June 27, 1908, the appellees commenced this action in the district court of Shawnee county, Kansas, against the appellants, taxing officers, to enjoin and restrain the appellants from levying and collecting taxes on lots 26, 28 and the west 21⅔ feet of lot 30, on West Eighth avenue, in the city of Topeka, alleging that the

plaintiffs are the council of administration of the Most Worshipful Grand Lodge of Ancient, Free and Accepted Masons of Kansas, and as trustees for such grand lodge hold the legal title to the real estate described. The petition also alleges that the lots do not exceed five acres in extent, and there is erected thereon a two-story brick building, which was paid for by such grand lodge, the same being an unincorporated organization, and the lots and building are used and occupied exclusively by such grand lodge and by its officers and agents; that in the building are certain articles of personal property, consisting of household and office furniture and books, used by such grand lodge of Masons; that such grand lodge is a benevolent and charitable association, and the above-described property, real and personal, is occupied and used exclusively for benevolent and charitable purposes, and was so as aforesaid owned, occupied and used on the first day of March, 1908, and for a long time prior thereto; that the lots and the building thereon, as well as the personal property, are owned by such grand lodge, the legal title thereto being held by plaintiffs for the use and benefit of the lodge, and being so held for the reason that the lodge is not incorporated, and, therefore, as an association, not capable of taking title thereto.

The petition further alleges that the lots and the building thereon, as well as the personal property, are exempt under the constitution and laws of the state of Kansas from taxation, and were so exempt on the first day of March, 1908, yet, notwithstanding such exemption, that through and under the direction of the tax commission the tax assessor of the county of Shawnee has assessed and returned the lots and building and the personal property for taxation for the year 1908, the building and lots being valued for taxing purposes at $13,000 and the personal property at $2500, and defendant Samuel Zimmerman, as county clerk of Shawnee county, threatens and is about to enter the property

described upon the tax rolls of that county, the defendant board of county commissioners will levy taxes thereon for state, county and municipal purposes, and the same will be collected by defendant Stanley Medlicott, as county treasurer, unless such officers be restrained from so doing, and if the taxes are not paid on the real property the same will be sold by the county treasurer for unpaid taxes, and a cloud thereby cast upon the title thereto.

The answer of the defendants denies that the organization described in the plaintiffs' petition, to wit, the Most Worshipful Grand Lodge of Ancient, Free and Accepted Masons of Kansas, is a benevolent and charitable association, and denies that the property or any part thereof described in the plaintiffs' petition is occupied and used exclusively for benevolent and charitable purposes, and denies that the property or any part thereof set forth in the plaintiffs' petition is exempt under the constitution and laws of the state of Kansas from taxation, and denies that the property or any part thereof was exempt from taxation under the laws of the state of Kansas on the first day of March, 1908.

Upon the trial the court made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT.

"(1) The Most Worshipful Grand Lodge of Ancient, Free and Accepted Masons of Kansas is the owner of the property described in the petition, the legal title thereto being held in trust by the plaintiffs, said lodge being an unincorporated association. The property in question is a tract of ground in the city of Topeka, of less than five acres, upon which is a building occupied and used by said grand lodge. The county assessor of Shawnee county has assessed and returned said property for taxation for the year 1908, and the defendants are proceeding to place said property upon the tax rolls of said county, and will enforce the collection of taxes levied thereon for general state and county and city purposes, unless restrained by this court.

"(2) Said grand lodge of Masons is an association of

persons who are or have been the principal officers of the subordinate lodges of Ancient, Free and Accepted Masons of the state, who meet in annual convention for the transaction of business and affairs of such grand lodge. The plaintiffs are the four principal officers of such grand lodge, constituting what is known as the council of administration. The grand secretary is also elected at the annual meeting of the grand lodge, has an office in the building on the premises in question, and attends to the routine business of the lodge. The grand lodge has general supervision and control of the affairs of the subordinate, or local, Masonic lodges of the state.

"(3) The order of Ancient, Free and Accepted Masons is an association of persons that has existed for several hundred years, and exists generally in all civilized countries. In the state of Kansas there are 379 local, or subordinate, lodges, organized under the supervision and direction of said grand lodge, and subject to its jurisdiction. The lodges of this state are independent and separate from those of any other state or country, except that all Masonic lodges are bound by certain ancient landmarks and principles, which are not subject to change by either a subordinate or grand lodge. The objects and purposes of the Masonic order and of the Masonic lodges of Kansas are to inculcate in their members the principles of morality, temperance, benevolence and charity, and teach them their duty to one another and to all mankind; to care for the sick and afflicted, to relieve the wants of the needy and destitute, and to promote the general good and welfare of their members and their families, or the widows and orphans of such members. None of such lodges are, or are permitted to engage, in any business for profit, nor is there connected with them any sick or death benefits, to which such members are entitled by reason of any consideration given by such member to secure the same, the care of the sick and help of the needy being actuated by purely charitable and benevolent motives, without return or compensation. Under the rules of the order each subordinate Masonic lodge pays annually into the treasury of the grand lodge a sum equal to one dollar for each member. In addition to such contribution, each subordinate lodge, through its committee on charity, which each lodge is required to have, makes contributions for the care of the sick and the help of the needy, as circumstances may require, generally

Mason v. Zimmerman.

among its own members and other Masons and their families, but not exclusively so. Such lodges are, as a rule, supported wholly by annual dues paid by their members, and the moneys so received are devoted wholly to current expenses and to charitable and benevolent purposes.

"(4) The functions of the grand lodge are, for the most part, of an administrative character. Its revenues are derived almost entirely from an annual ·per capita· tax of one dollar on the members of the subordinate ,lodges, which amounts to annually about $30,000, there being about 30,000 Masons in the state subject to such tax. The grand lodge operates under a constitution and by-laws. By the former it is expressly prohibited from engaging in business of any kind, or from being a party to, or shareholder in, any business, partnership or corporation; but the constitution expressly authorizes it to found, organize and maintain 'a Masonic home within the state of Kansas for the relief and benefit of distressed and destitute Masons, their wives, widows and children.' In the year 1893 the grand lodge secured the incorporation of the Kansas Masonic Home, the purposes of which, as stated in the charter, are 'to maintain a home in the state of Kansas for Master Masons, their wives, widows and children, and children of members of the Eastern Star, in such manner as the by-laws may direct.' Under the charter as amended this corporation is governed by a board of directors, consisting of nine members, four of whom are the council of administration, four are elected by said council of administration, and one by the grand chapter of the Eastern Star, the Eastern Star being an association of wives and daughters of Master Masons. About the year 1896 the board of directors of the Kansas Masonic Home, under the direction of the grand lodge, and from moneys furnished by the grand lodge, purchased a building and grounds at Wichita, Kan., which has since been occupied, used and maintained as a home for dependent Master Masons, their wives, widows and children and children of members of the Eastern Star. Since the institution of said home between 300 and 400 different persons have been kept and maintained, and at this time there are from sixty to seventy-five persons in the home. The inmates of the home are maintained, fed and clothed without any charge or expense whatever to them. Said home is a

charity of the highest order, though limited in its benefactions as above stated. The home is dependent for support almost wholly upon the donations made to it by said grand lodge, and without such support it could not be maintained. In accordance with the by-laws of the grand lodge, fifty per cent of all its revenues is used for the support and maintenance of said Masonic Home, and has been so used for a number of years past; ten per cent of the remaining fifty per cent of the revenues of the grand lodge is placed in what is known as the 'charity fund,' where it must remain inviolable, to be used for no other than charitable purposes. This charity fund is used for general charity, dispensed by the grand lodge outside of the home. Since January 1, 1903, the revenues of the grand lodge have amounted to $146,100.52. Out of this has been paid for the maintenance and support of the Masonic Home the sum of $68,373.81, and for general charity there has been paid out during that time the sum of $6834.39. All other moneys of the grand lodge have been used for current expenses, except the sum of between $6000 and $7000, which is now in the treasury. While the charities and benevolences of the grand lodge are confined almost entirely to the relief of Master Masons, their families, widows and orphans, or children of members of the Eastern Star, yet they are not entirely so confined, and assistance is given by the grand lodge and from its funds to other worthy needy persons in distress. No one connected with the Masonic Home, or with the grand lodge, nor any one who is or may be the recipient of its benefactions or charities, has any legal right to ask or require such aid and assistance as the grand lodge renders, by reason of anything which said person has done or paid; all such aid and assistance being free from any material or valuable consideration, and based wholly upon the charitable and benevolent disposition of the grand lodge. The recipients of such benefactions and charities are in all cases without means of support and would otherwise constitute charges upon the public.

"(5) The Masonic order is a secret organization, in so far as its ritual and certain forms used in the initiation and recognition of members are concerned; but its ancient landmarks, its principles, its teachings and general operation of the order, in so far as it concerns or affects the relationship of its members and their conduct toward one another, and toward mankind in gen-

eral, are not secret, but are open to the public and set forth in public addresses, recognized Masonic books and publications.

"(6) The building on the lots in question, together with the lots, belong to the grand lodge in manner heretofore found, and are occupied by the officers of the grand lodge in the administration of its affairs, as above set out, and by a library of about 5000 volumes, which is open to the public. No part of the building, or of said lots, is leased or otherwise used with a view of profit.

"(7) Said grand lodge of Masons is a charitable and benevolent association, and the property in question is used exclusively by said grand lodge for charitable and benevolent purposes, but its benefactions are for the most part, but not exclusively, limited to members of the Masonic order, their families, widows and orphans."

"CONCLUSIONS OF LAW.

"(1) The fact that the charitable and benevolent acts of the grand lodge are for the most part for the benefit of a limited class does not exclude it, within the meaning of the constitution and statute of the state, from being considered a charitable and benevolent association, whose property is exempt from taxation.

"(2) The plaintiffs are entitled to a permanent injunction, as prayed for in their petition."

Judgment was rendered in favor of the plaintiffs, enjoining the officers from levying or collecting any taxes assessed against the property described. A motion for a new trial was denied. This motion, among other things, alleged that the decision of the court was not sustained by the evidence, that the decision of the court was contrary to law, and error of law occurring at the trial and excepted to by the defendants.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, *J. J. Schenck,* county attorney, and *W. E. Atchison,* assistant county attorney, for the appellants.

*T. F. Garver,* and *R. D. Garver,* for the appellees.

The opinion of the court was delivered by

SMITH, J.: The findings of the court setting forth the purposes for which the property in question is used are findings numbered 3, 4 and 6, copied above. Finding No. 7 is a mixed question of law and fact. Conclusion of law No. 1 accords with the decision of this court in *Masonic Home v. Sedgwick County,* post.

The defendants contend that finding No. 7 and both conclusions of law are erroneous. The brief of the defendants is devoted principally to the discussion of the proposition that the exemption of property used exclusively for "charitable and benevolent" purposes is limited to such charities as are open to the public generally, and does not include such charities as are open only to the members or relatives of a particular society. This contention is decided adversely to the defendants in *Masonic Home v. Sedgwick County,* post.

The only remaining question pertinent to this case is whether the constitutional and statutory exemptions include property used only indirectly for dispensing charity or whether the exemptions include only such property as is used directly for such purpose. In *St. Mary's College v. Crowl, Treasurer, &c.,* 10 Kan. 442, it was held:

"Property, in order to be exempt from taxation, because used for educational purposes, must be used directly, immediately and exclusively for such purposes." (Syllabus.)

In *Stahl v. Educational Assoc'n,* 54 Kan. 542, it was said:

"Any person or corporation claiming immunity from the common burdens of taxation, which should rest equally upon all, must bring himself or itself clearly within the exemption; and hence a provision creating an exemption from taxes must be construed strictly.

"The charter granted by the legislative assembly of the territory of Kansas to the Kansas Educational Association of the Methodist Episcopal Church provided

'that all the property or funds, real, personal, or mixed, that may be received, held or appropriated by or for said association, for the exclusive purpose of religion or education, including a cemetery not exceeding forty acres, shall be forever exempt from taxation.' *Held,* that a dwelling house owned by the association, which was devised to it for the exclusive purpose of education, is not exempt from taxation, under the provisions of the charter of the association, if not used exclusively for religious or educational purposes, although the house is rented to a tenant, who pays rent therefor, and such rent is appropriated by the association exclusively for the purpose of education." (Syllabus.)

Following these decisions, the provisions of section 1 of article 11 of the constitution of Kansas that "all property used exclusively for . . . benevolent and charitable purposes . . . shall be exempt from taxation" must be strictly construed, as should the similar provision of section 2 of chapter 408 of the Laws of 1907. So construed, these provisions exempt from taxation only such property as is used exclusively, directly and immediately in dispensing charity. "Charity" is a gift to promote the welfare of others in need, and the term "charitable," as used in such constitutional and statutory provisions, means "intended for charity," and the word "benevolent," as used therein, is entirely synonymous with "charitable."

The findings show that the property in question is used as an office building for the principal officers of the grand lodge of Masons of Kansas, which "has general supervision and control of the affairs of the subordinate, or local, Masonic lodges of the state." It appears, therefore, that the property in question is used indirectly in furthering the charities dispensed by or through the grand lodge, such as the Kansas Masonic Home and other charities. It is not, however, used directly, immediately and exclusively in dispensing charity. It follows that the court erred in denying the motion for a new trial, and in rendering judgment for the plaintiffs.

The judgment is. therefore reversed, with instructions to enter judgment for the defendants.

SMITH, J. (concurring specially) : I concur in the decision of this case. I dissent from the definition of the word "benevolent," as given in the opinion. "Benevolent" and "charitable" are sometimes used synonymously, but are not usually so used. Charitable institutions are usually spoken of as benevolent and charitable, for whatever is charitable is necessarily benevolent. But an act or an institution may be benevolent without being charitable. "A charity is a gift to promote the welfare of others." (*Phila., Appellant, v. Masonic Home,* 160 Pa. St. 572, syllabus; *Masonic Home v. Sedgwick County,* post.) Webster's New International Dictionary contains this denition of charity: "Whatever is bestowed gratuitously on the needy or suffering for their relief; alms." As distinguished from benevolent, while as before said it is often used synonymously, charitable relates to the gratuitous giving of material benefits to the needy, sick or unfortunate. Benevolent, when not used in the sense of charitable, and as distinguished from charitable, pertains more to the immaterial. It is altruistic; it pertains to the general improvement and uplift of an individual, a class, or the general public. As to the definition of "benevolent," see the following: *Chamberlain v. Stearns,* 111 Mass. 267; *Adye v. Smith,* 44 Conn. 60; *Norris v. Thomson's Executors,* 19 N. J. Eq. 307; *Suter v. Hilliard,* 132 Mass. 412; *St. Joseph's Hospital Association v. Ashland County and others,* 96 Wis. 636.

As I construe the constitution and the statute, the words "benevolent and charitable" are used in the disjunctive instead of the conjunctive. If in the constitutional provision the different purposes for which property might be exclusively used and be exempt are specified conjunctively, then the comma following each designation prior to "benevolent" is used ·to avoid the

repetition of the conjunction "and." But it is evident that it was not the intention of the makers of the constitution or of the statute to require that a piece of property should be used exclusively for all of the purposes recited, and that such purposes are recited disjunctively—that is, any one of the exclusive purposes recited is sufficient to require the exemption. If so, then "and" between "benevolent" and "charitable" should also be understood as disjunctive, and not as conjunctive. Otherwise, the disjunctive "or" should be used before "benevolent," as "or benevolent and charitable."

I do not believe that we should convict the framers of the constitution of using a word therein which gives no added meaning to the instrument, and I believe that it was the intention to provide, and that a fair construction of the provision is, that property used exclusively, directly and immediately for benevolent purposes is exempt from taxation, as well as property used exclusively for charitable purposes.

MASON, J., not sitting.