No. 36,515

V. B. CLEMENTS, L. V. COLLINS, F. M. PUTNAM, B. F. SCHWARTZ and FRED D. JOY, Trustees, *Plaintiffs,* v. WILLIAM LJUNGDAHL, DALE A. FISHER and EARL C. MOORE, Constituting The State Commission of Revenue and Taxation, *Defendants.*

(167 P. 2d 603)

Opinion filed April 6, 1946.

*B. I. Litowich,* of Salina, argued the cause, and *LaRue Royce, E. S. Hampton, R. E. Haggart* and *H. H. Dunham, Jr.,* all of Salina, were on the briefs for the plaintiffs.

*Stanley Taylor,* of El Dorado, argued the cause, and *Tom Stratton,* of Osage City, was on the briefs for the defendants.

The opinion of the court was delivered by

Hoch, J.: This is an original proceeding in mandamus in which the plaintiffs seek removal from the tax rolls of certain real property in the city of Salina owned and used by a number of Masonic bodies. The ultimate question is whether the property is used exclusively for benevolent or charitable purposes.

The property involved, known as the Masonic Temple, is owned jointly by five different Masonic bodies, the title being held by trustees who are the plaintiffs in the present proceeding. The trustees made application to the board of county commissioners for tax exemption of the property on the ground that it was "used exclusively for educational, religious, charitable and benevolent purposes" and was therefore entitled to exemption under the law. The county commissioners declined to exempt the property on the grounds that the statutes (G. S. 1935, 79-1701) provide that no property shall be stricken from the tax rolls until authority to do so is obtained from the State Commission of Revenue and Taxation. Application was then made to the State Commission of Revenue and Taxation; a brief hearing was held before the commission, and on May 19, 1945, the commission issued its order denying the application to exempt the property, and in the order it was stated:

"The Commission further finds that the evidence submitted both in writing and orally does not show that the property for which exemption is requested is used exclusively for religious, educational, or charitable purposes. That the representative of the applicants stated that he would stand on the record submitted. That the Commission cannot distinguish this case from that of the *Manhattan Masonic Temple against Rhodes,* 132 Kansas 646, wherein the court denied exemption on the ground that 'The property is not so exclusively used for purposes of benevolence and charity as to bring it within constitutional and statutory exemptions from taxation.' "

The instant proceeding followed.

In view of the fact that the case is submitted here upon a stipulation of facts, it is unnecessary to set out in full the allegations of the pleadings. Suffice it to say that the plaintiffs set out in detail facts with reference to the location and nature of the property and its ownership; the objects and purposes of the various Masonic orders involved; recite the steps taken before the county commissioners and the state commission to secure exemption of the property; and assert that "under the undisputed testimony and

evidence presented to said commission the property herein referred to is owned by the respective bodies as herein alleged and is used by the owners thereof solely and exclusively for religious, educational, charitable and benevolent purposes and for no other purpose." They assert that under the facts shown, the commission had no discretion in the matter and that it was their clear legal duty to direct the removal of the property from the tax rolls. In its answer the commission expressly denied that the property is used exclusively for educational, scientific, religious, benevolent and charitable purposes within the meaning of the tax-exemption provisions of the law. It is unnecessary at this point to take further notice of the pleadings. We go to the stipulation of facts.

The property is owned jointly by five different Masonic bodies, the Salina Consistory, Isis Temple, A. A. O. N. M. S.; Salina Chapter No. 18, R. A. M. and Askelon Commandery No. 6; Harmony Chapter, O. E. S.; and Salina Lodge No. 60, A. F. & A. M.; the title being held by five trustees, each one of whom was duly elected to represent one of the Masonic bodies above named. The building was erected in 1923 by The Masonic Temple Aid Association, a Kansas corporation; was conveyed to other owners in 1934 and in 1944 was purchased by its present owners who entered into an agreement providing for the use, management and control of the property by the joint owners. Details of that agreement need not be recited.

The pertinent facts as to the building, its occupancy and use may be summarized as follows: The building is six stories high and occupies all the lots in question except such portions as are used as a lawn and as driveways. The building has numerous large corridors on the various floors, some of which are not used. On the first floor is the office of the recorder or secretary of Isis Temple, and a large dining room and kitchen; on the second floor is a room used for paraphernalia and a room used as the office of the secretary of the Salina Consistory. On the third floor is a large auditorium and stage used for lodge meetings of the Salina Consistory and Isis Temple for ritual and initiation purposes. The fourth and fifth floors are not used except for a storage room for paraphernalia. On the sixth floor are separate lodge rooms of the Salina Lodge A. F. and A. M., Harmony Chapter O. E. S., and Salina Chapter R. A. M. and Commandery. The dining room on the first floor is used at various meetings of the Salina Consistory and at stated times

luncheons are served there to various members of Isis Temple. The dining room is also used by the other Masonic bodies for their own banquets or dinners. All meals furnished in the dining room are paid for by each organization which is at the time using it, "and no charge is made for any of said meals except luncheons served to members of Isis Temple." At the luncheons served by Isis Temple to its members, "a small charge is made, which charge does not pay the cost of the meals and serving of same."

It is further agreed in the stipulation that "no part of said building is used for any commercial purpose. No portion of the same has been rented since the present owners have acquired the same for any purpose at any time. No civic meetings are permitted to be held in the auditorium or in any other portion of the building. No other organizations or individuals have been permitted to use said building for any purpose free of rent since the present owners have owned said building."

The pertinent provision of the constitution, which is article 11, section 1, is as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, . . . *All property used exclusively for* state, county, municipal, literary, *educational, scientific, religious, benevolent and charitable purposes* . . . shall be exempted from taxation." (Italics supplied.)

Section 79-201, G. S. 1935, is also pertinent to our inquiry, but need not be quoted since it is not contended that the statute enlarges the conditions of exemption as far as the instant issue is concerned. Under the statute as under the constitution, the property is not exempt unless it is used exclusively for "literary, educational, scientific, religious, benevolent or charitable purposes."

The following rules or principles are firmly established by our decisions:

1. Tax-exemption provisions are strictly construed and the burden is upon those seeking exemption to show clearly that they come within the exemption provisions. (*Clinton v. State Tax Com.*, 146 Kan. 407, 423, 71 P. 2d 857, and cases there cited: *State, ex rel., v. Security Benefit Assn.*, 149 Kan. 384, 385, 87 P. 2d 560; *Palmer v. Commission of Revenue and Taxation*, 156 Kan. 690, 696, 135 P. 2d 899.)

2. The question of ownership or of who holds title to the property is not a determining factor. (*Masonic Home v. Sedgwick County*, 81 Kan. 859, syl. ¶ 1, 106 Pac. 1082, 26 L. R. A., n. s., 702;

*Kappa Kappa Gamma v. Pearcy,* 92 Kan. 1020, 142 Pac. 294, 52 L. R. A., n. s., 995, and cases cited on page 1028.)

3. The question is not whether the property is used *partly* or even *largely* for the purposes stated in the exemption provisions, but whether it is used *exclusively* for those purposes. (*State, ex rel., v. Security Benefit Ass'n,* supra, and cases cited on page 394.)

Plaintiffs emphasize the objects and purposes of the Masonic order and of the Masonic lodges here involved, quoting from various of our decisions upon that point. One such quotation is from *Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 296 Pac. 734, which is as follows:

" 'The object and purposes of the Masonic order, and of the Masonic lodges of Kansas, are to inculcate in their members the principles of morality, temperance, benevolence and charity, and to teach them their duty to one another and to all mankind; to care for the sick and afflicted among their members, to relieve the wants of the needy and destitute, and to promote the general good and welfare of their members and their families, or the widows and orphans of such members.' "

This worthy purpose of the Masonic order to inculcate sentiments of benevolence and charity in its members and to minister to members and their families in distress is not questioned. The only question here is whether the building is used exclusively for benevolent and charitable purposes within the meaning of the tax-exemption provision of the constitution. The question might be more troublesome if substantially the same issue had not been heretofore considered. In its order denying the application, the state commission stated that it could not distinguish this case from *Manhattan Masonic Temple Ass'n v. Rhodes,* supra, and we are also unable to find a sound basis for distinguishing the two cases. In the Manhattan case the property involved was a Masonic temple used entirely for lodge purposes. It contained assembly rooms, rooms in which paraphernalia was kept, a large lobby, a number of cloak rooms, a library, a kitchen, and a banquet hall. As in the present case no part of the building was used for commercial purposes. In that case it was held that "the property is not so exclusively used for purposes of benevolence and charity as to bring it within constitutional and statutory exemption from taxation." (Syl. ¶ 1.) The only feature in the Manhattan case not present in the instant one is that in the Manhattan building there was a clubroom equipped with billiard and pool tables for the use of the members. However, the decision in the Manhattan case was not based at all upon that

particular recreational or social feature, and certainly it would be drawing a very fine line to say that that one use was essentially different from other social uses present in the instant building. Plaintiffs advance one other reason for distinguishing the cases. They say that in the Manhattan case the district court had made a finding that the building was not used "directly, immediately, and exclusively in dispensing charity," and that that was a finding of fact which was binding upon this court. That argument is not convincing. In the Manhattan case as here, the question was whether upon the established facts the use of the building was exclusively for benevolent or charitable purposes. The conclusion to be drawn from the facts is a question of law.

The Manhattan case followed *Mason v. Zimmerman,* 81 Kan. 799, 106 Pac. 1005. That case involved a building in Topeka occupied by officials of the Masonic Grand Lodge in administration of its affairs, and contained in addition to the offices a library open to the public, no part of the building being used for commercial purposes. In *Mason v. Zimmerman,* supra, the court discussed at length the organization and activities of the Masonic order and narrowed the issue to a discussion of the meaning of the words "charity" and "benevolence," as used in the tax-exemption provision. Interpreting those terms, it was said in the opinion: " 'Charity' is a gift to promote the welfare of others in need, and the term 'charitable' as used in such constitutional and statutory provisions, means 'intended for charity,' and the word 'benevolent' as used therein, is entirely synonymous with 'charitable.' " Mr. Justice Smith concurred in the result but dissented from the view that the words "benevolent" and "charitable" are synonymous. However, the distinction which he drew was that the word benevolent as distinguished from the word charitable "pertains more to the immaterial . . . is altruistic, it pertains to the general improvement or uplift of an individual, a class or the general public." All the justices seemed to agree that the words as used in the constitution had reference to altruistic and helpful activities directed toward other persons. It may well be doubted whether for the purposes of tax exemption the words can be applied to the use of a building by a lodge, club, or other organization, however worthy its purposes, whose members associate themselves together for their own improvement and for the benevolent care of their own members and their families when in need of help.

In any event, allowance of the writ would in our opinion require overruling our former decisions.

In the recent case of *State, ex rel., v. Security Benefit Ass'n,* supra, many of our decisions bearing upon this issue are cited and analyzed. It is true that the facts in that case were quite different from those now before us. The hospital property there involved was used in connection with the promotion of the extensive insurance business of its owners. However, the analysis there made of cases upon which the plaintiffs here rely is directly in point on the issue of charitable and benevolent use and need not be repeated.

Under prior decisions and particularly *Manhattan Masonic Temple Ass'n v. Rhodes,* supra, a construction of the constitutional provision involved has now been long established. That construction is clearly applicable to the facts here shown. To change that construction now would have a far-reaching effect as to countless other properties owned by this and similar fraternal organizations. If such a change is to be made, it should be done by the legislature and not by the court.

The writ is denied.