No. 38,379

DEFENDERS OF THE CHRISTIAN FAITH, INC., and DR. GERALD B. WINROD, DR. WILLIAM T. WATSON, DR. EDWARD FEHR, DR. JOSE HERNANDEZ and DR. J. P. RODRIGUEZ, Trustees, *Plaintiffs,* v. FRED HORN, DALE A. FISHER, and O. W. SCHWALM, Constituting and Members of the State Commission of Revenue and Taxation, *Defendants.*

(254 P. 2d 830)

Opinion filed March 7, 1953.

*Robert N. Partridge,* of Wichita, argued the cause, and *George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston* and *Thomas E. Woods,* all of Wichita, were with him on the briefs for the plaintiffs.

*Wilbur G. Leonard,* of Council Grove, argued the cause, and *C. C. Rankin,* of Lawrence, and *Ervin G. Johnston,* of Peru, were with him on the briefs for the defendants.

The opinion of the court was delivered by

HARVEY, C. J.: This is an original proceeding in mandamus for judgment directing the state commission of revenue and taxation and the members thereof to issue an order declaring certain property to be exempt and to remove the same from the tax rolls of

the state and of Sedgwick county, and to refund the tax for the year 1948, declared to have been paid. In the petition it was alleged that the Defenders of the Christian Faith, Inc. is a corporation duly organized and existing under the laws of the state of Kansas, with its principal place of business at 2502 East Douglas Avenue in the city of Wichita; that Dr. Gerald D. Winrod of Wichita; Dr. William T. Watson of St. Petersburg, Florida; Dr. Edward Fehr of Hoisington, Kansas; Dr. Jose Hernandez of New York, and Dr. J. F. Rodriguez of Piedras, Puerto Rico, are the duly authorized and acting trustees of the Defenders of the Christian Faith, Inc., and as such trustees hold the title to the building and improvements located at 2502 East Douglas Avenue, Wichita, more particularly described as Lots 24 and 26, Douglas Avenue, Lot 5, Oliver's Subdivision, Chautauqua Addition to the city of Wichita, and as said trustees hold the property for the benefit of the corporation; that the Defenders of the Christian Faith, Inc. is a nonprofit corporation organized for religious purposes; that a typewritten copy of the articles of incorporation was attached and made a part of the petition; that the building and improvements located at the above address are the headquarters of the corporation, and it is in this building that the Defenders of the Christian Faith, Inc. carry on their work, which is of a religious nature; that the building is used by the corporation directly and exclusively for religious purposes and is therefore exempt from taxation by reason of section 1, article 11 of our constitution, which is set out; that the plaintiffs herein received subscriptions of money from Christian people all over the state of Kansas and other parts of the country for the express purpose of erecting and equipping the building, and from the sums so collected plaintiffs constructed the building in 1946; that the Defenders of the Christian Faith, Inc. moved into and occupied the building after its completion and ever since its construction has been the sole occupant of the building; that after the completion of the building taxes were paid thereon for the year 1947; that on April 25, 1950, plaintiffs filed their application for relief from a tax grievance with the state commission of revenue and taxation asking that the property be declared exempt and removed from the tax rolls, setting forth in the application the reasons therefor; that the recommendation of the county clerk and the county assessor of Sedgwick county is a part of the application made, stating that the facts set forth in the application are true and rec-

ommending that the property be relieved from taxation and declared exempt; that a hearing was had upon the application on November 28, 1950, at which all members of the commission were present, and a certified transcript of the proceedings of the board of commission is attached to the petition; that at the time of the hearing permission was obtained to submit the affidavit of Doctor Winrod, president of the corporation, which was submitted on December 19, 1950, a copy of which is attached to the petition; that on January 2, 1951, the commission entered its order denying the application, a copy of which is attached; that the constitution and statutes of Kansas provide that property used exclusively for religious purposes shall be exempt from taxation; that under the undisputed testimony and evidence presented to the commission the property herein referred to is used for such religious purposes, and no other purpose; that no one opposed the application; that the commission, considering the evidence and affidavit submitted, had no discretion in the matter; that under the facts and the law the plaintiffs are entitled to have the property declared exempt and stricken from the tax rolls and to have a refund of the tax paid for the year 1948; that it was the clear legal duty of the commission to order the removal of the property from the tax rolls as exempt and order a refund of the tax paid for 1948; that the plaintiffs have no adequate remedy at law, and that plaintiffs will suffer irreparable damage if the court does not make an order declaring the property exempt from taxation.

To this petition defendants filed an answer in which they admitted that the Defenders of the Christian Faith, Inc. is a Kansas corporation with its headquarters as designated in the petition, and admitted the various exhibits attached to the petition were correct copies of what they purported to be. The answer contained a general denial and a specific denial that the functions and activities of the plaintiff, Defenders of the Christian Faith, Inc., are wholly religious in nature and that the property of the plaintiffs described is used exclusively, immediately and directly for religious purposes, and further alleged that following the filing of plaintiff's application for tax relief from a tax grievance they caused an inspection of the property to be made to ascertain the use to which the property was being put; that a named attorney of the commission was appointed to make such inspection and to file a report with the commission; that the inspection was made and the report filed,

a copy of which was attached to the answer. It was further alleged that plaintiffs cannot be afforded relief of their 1948 taxes for the reason plaintiffs had a completely adequate remedy at law which they had failed to pursue. It was further alleged that the property of plaintiffs, previously described, is not exempt under the constitution and statutes of the state of Kansas for the reason that it is not used exclusively, immediately and directly for religious purposes, and alleged plaintiffs stated no cause of action and are entitled to no relief either by refund of tax or exemption from future taxation. Plaintiffs filed a motion for judgment on the pleadings. The case was set for hearing in this court on the abstract, briefs and oral argument. At the hearing it became evident the motion for judgment on the pleadings could not be sustained for the reason the pleadings presented a controverted issue of fact, namely, whether the building in question is used exclusively for religious purposes. Counsel for plaintiffs suggested that this court appoint a commissioner to take the evidence and make suggested findings of fact and conclusions of law. Thereafter the court appointed Frank C. Baldwin, Esq., of Concordia, a member of the bar of this court, as its commissioner to hear the evidence and to make suggested conclusions of fact and of law and report to this court. That has been done and a copy of the report of the commissioner is attached hereto and marked Appendix "A" of this opinion.

Plaintiffs filed a motion to strike certain of the findings of fact, or words or phrases therein, upon the ground that they were not sustained by the evidence, or for other reasons stated. We have examined this motion and find it not to be well taken. They also filed a motion to strike conclusions of law Nos. 2, 3, 4 and 5 as being incorrect and contrary to the decisions in this state. We think these conclusions of law naturally follow from the findings of fact made by our commissioner.

Counsel for defendants filed a motion asking the court to approve the report of our commissioner and to render judgment for defendants. The case was again set for hearing in this court and was heard upon the original abstract and briefs and supplemental abstracts and briefs and oral argument. Since the report of the commissioner is advisory only the court has examined the entire record and reached conclusions in harmony with those of our com-

missioner. Since the facts are fairly well stated in our commissioner's report we need not restate them more fully here.

Our statute (G. S. 1949, 79-101) reads:

"That all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act."

The portion of our constitution pertinent here (Art. 11, § 1) reads:

"The legislature shall provide for a uniform and equal rate of assessment and taxation, . . . All property used exclusively for . . . religious . . . purposes, . . . shall be exempted from taxation."

G. S. 1949, 79-201 in part reads:

"That the property described in this section, to the extent herein limited, shall be exempt from taxation . . ."

This is followed by thirteen subdivisions which pinpoint property exempt from taxation. Perhaps this section enlarges but does not restrict the general words used in our constitution above quoted. It is not seriously contended that any one of the subdivisions specifically enumerates as exempt the property sought to be held exempt in this action. Therefore the question before us is whether the property sought to be exempted is used exclusively for religious purposes. Here the property was alleged to be the headquarters of the Defenders of the Christian Faith, Inc., which is not a church as that term is ordinarily understood. Under our statutes and our constitution taxation is the rule; exemption from taxation is the exception; and one who claims property to be exempt from taxation because of the use of the property has the burden of showing that the use of the property comes clearly within the exemption claimed. Without quoting from them we cite our cases which we think clearly establish these rules and sustain our conclusion and that of our commissioner. See:

*Washburn College v. Comm'rs of Shawnee Co.,* 8 Kan. 344;

*Vail v. Beach,* 10 Kan. 214;

*St. Mary's College v. Crowl, Treasurer, &c.,* 10 Kan. 442;

*Stahl v. Educational Assoc'n,* 54 Kan. 542, 38 Pac. 796;

*Mason v. Zimmerman,* 81 Kan. 799, 106 Pac. 1005;

*Wheeler v. Weightman,* 96 Kan. 50, 149 Pac. 977; which in the opinion has an extensive discussion of our earlier cases pertaining to taxation and exemption;

*Lawrence Business College v. Douglas County,* 117 Kan. 436, 231 Pac. 1039;

*Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 296 Pac. 734;

*Clements v. Ljungdahl,* 161 Kan. 274, 167 P. 2d 603.

The writ prayed for by plaintiffs is denied.

WEDELL, J., concurring in the result.

## APPENDIX "A"

Pursuant to my appointment as Commissioner herein, I have taken evidence upon the issues involved and from such evidence I have made and now submit the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. This original proceeding in mandamus was filed in the Supreme Court by Defenders of the Christian Faith, Inc. and its trustees against the State Commission of Revenue and Taxation to compel the removal of the building owned by such organization and situated on Lots Twenty-Four (24) and Twenty-Five (25) in Oliver's Sub-Division of Lot Five (5) of Chautauqua Addition to the City of Wichita, Kansas, from the tax rolls as exempt from taxation, such Commission of Revenue and Taxation having refused such relief upon appropriate application therefor, and the reasons assigned being that such building is not and has not been used exclusively, immediately and directly for religious and educational purposes.

In plaintiffs' petition they seek also to recover taxes previously paid upon such property, but have now abandoned their prayer for such relief.

2. Defenders of the Christian Faith, Inc. had its inception in a meeting at Salina, Kansas, in November 1925, when approximately 100 ministers and laymen met and founded the organization as an inter-denominational body and chose its name. The declared purpose of the organization was to defend and promulgate historic and evangelical Christianity and the supernatural verities of the faith as opposed to the school of thought, which seeks to reduce Christianity to the level of a humanitarian institution and excludes everything supernatural.

The organization has had a continuous existence since the organization meeting in 1925 and operated under a trust agreement until November 19, 1945, when it was granted a charter as a non-

profit corporation by the State of Kansas. The stated purposes of such corporation are set out in its charter as follows: To organize Defender Church congregations on mission fields. To establish educational institutions. To ordain pastors, evangelists, laymen for the Christian ministry. To own and operate printing equipment. To receive and disburse monies for missionary purposes. To acquire, own, hold and dispose of such property, real, personal and mixed, as may come to the hands of the organization for the accomplishment of its purposes. To publish books, pamphlets, tracts, magazines and other religious literature. To generally engage in the purposes of teaching and the dissemination of historic Christianity; and to engage in any and all activities carried on by organizations of like character.

3. Defenders of the Christian Faith, Inc., following its organization conducted an inter-denominational religious program by sponsoring large rallies and evangelical meetings in many large cities outside of Kansas, and some such meetings were held in Kansas.

4. The corporation now carries on an extensive broadcasting program known as the "Defender Hour". These broadcasts are devoted to religious subjects, and they are carried each night and on Sunday morning over three powerful radio stations on the Mexico border and at the present time three Kansas stations. From May, 1949, to May, 1951, 727 sermons were so broadcast over Kansas radio stations. The scripts for such broadcasts are prepared by Dr. Winrod and his assistants in the building involved in this controversy and there transposed to a master record, from which transcripts are made, which are then flown to the various radio stations from which they are broadcast. The master record remains in the studio in such building.

5. The Defenders has 180 organized churches or missions, of which 152 are in Puerto Rico, 1 in New York City, and the remainder in Liberia, Dominican Republic, India, Mexico and Cuba, in each of which, and regardless of the language spoken, the Apostles Creed is quoted each Sunday morning and forms the basis of the religious worship of the congregation.

6. Defenders of the Christian Faith, Inc., sponsors a theological seminary in Puerto Rico with a present enrollment of 111, which gives training to students, comparable with similar schools in the United States. Upon graduation the trained ministers go out and establish churches and do constructive missionary work among their own people.

7. Defenders of the Christian Faith, Inc., maintains no congregation, church, mission, seminary or assembly within the State of Kansas.

8. Defenders of the Christian Faith, Inc., does now and has at all of the times involved in this controversy published three magazines. The Defender, a monthly magazine with 76,000 circulation, 17,000 of which go to pastors of different church denominations; a companion journal in Spanish is published in Puerto Rico, and one published in India. The subscription price of the Defender is $1.00 per year, and while some advertising is carried, the magazine is not self-sustaining.

For the fiscal year ending September 30, 1949, there was received from subscription to and advertising in such magazine $28,679.58 and for the succeeding fiscal year $31,844.11. With its circulation of 76,000, it is apparent that such magazine is sent to many non-subscribers which fact contributes to the loss incident to the publication of such magazine.

This magazine is printed in a printing plant owned by the corporation but located elsewhere than in the building involved in this action. When such magazine is ready for shipment, it is taken by truck to the mailing and shipping room of the building involved herein, from which place it is mailed or shipped to its ultimate destination.

Most of the articles and editorials in the Defender are devoted to religious matters, but some articles published therein are political, and not religious, and some are neither of a political or religious nature, and I, therefore, find that such magazine is not devoted exclusively to religious matters.

9. Dr. Gerald B. Winrod, a director, President and executive officer of Defenders of the Christian Faith is 51 years of age, was ordained and entered the ministry in 1929. He is a member of the Baptist denomination, and also a member of the Defenders of the Christian Faith, Inc., is an evangelistic Bible teacher and lecturer on religious themes, and the author of some books. His sole compensation from the corporation is a salary of $500.00 per month (less tax). He receives a monthly rental check of $100.00 for the real estate leased to the corporation and upon which is situated the building of the corporation around which this controversy centers, which rental is by him turned back to the corporation. The other directors of the corporation are also ministers.

10. The headquarters of the Defenders of the Christian Faith, Inc., is now and has at all times been at Wichita, Kansas, and from that place its activities in their various fields have been and are now supervised, administered and controlled.

11. In the years prior to 1943 the Defender organization had occupied various leased premises as an office in which to supervise, administer and control its activities. In that year Dr. Winrod purchased (taking title in his own name) the North 50 feet of Lots Twenty-four (24) and Twenty-Five (25) in Oliver's Sub-Division of Lot Five (5) of Chautauqua Addition to the City of Wichita, Kansas, at 110 North Poplar Street, upon which there was situated a brick building 50 feet square. In 1947, this building, but not the real estate, was conveyed by Dr. Winrod and his wife to the Defender corporation.

About the same time Dr. Winrod purchased that portion of the above described lots immediately South of the above described property and in February 10, 1947, leased the same to the corporation for a period of 50 years at a rental of $100.00 per month for ten years and on a six percent return basis on valuation thereafter, with an option to purchase at appraised value any time during the 50-year period, one-half of the rental to be credited upon the purchase price. Defenders corporation built a one-story brick building on the South portion of these lots connecting it with the 50 foot square building on the North, making a single structure 50 feet wide and 145 feet deep, and it is such building that is now claimed by the plaintiffs as being exempt from taxation.

12. This building is divided into rooms and offices used respectively by the plaintiffs as herein found:

(a) The first room upon entering the building from the street comprises the entire width of the building and extends in depth approximately 15 feet. In it the plaintiff conducts a book store, normally containing about 3,000 volumes of religious books, tracts and pamphlets, and some anti-Communistic books. Such books are offered for sale and sold at retail to the general public either at the store or in response to mail orders therefor. In addition thereto, there is kept in said store for sale, and similarly sold, various items consisting generally of greeting cards, gift items, pencils, note books, memorandum pads, pictures, wall plaques and similar merchandise, all bearing scripture texts. For the fiscal year ending September 30, 1949, the corporation received from the sale of books, tracts, etc., the sum of $31,500.89, and for the same period expended $21,870.08

for similar merchandise while for the year ending September 30, 1950, the sales aggregated $32,584.11, and purchases $17,687.63.

(b) A prayer chapel unfurnished and unadorned, except for an altar and a picture of Christ on the wall. This room is used by Dr. Winrod and other directors and employees of the corporation for prayer and meditation, and is available to all who may desire to use it.

(c) A room devoted to eight missionary fields, where complete records are kept of church and Sunday school attendance within such fields, and the number of Baptisms, conversions, etc., and also records of sponsors of missionary work and copies of monthly reports of such sponsors. Here correspondence with missionaries throughout the various fields is conducted, as is also correspondence with constituents, who support missionary work.

(d) Editorial room where two people help with research and manuscripts and assist Dr. Winrod in the preparation of some of his radio scripts.

(e) Executive office where all mail is opened, classified and delivered to the various departments, being merchandise, subscriptions, missionary and radio departments. All funds paid to the corporation for all purposes are received and handled in this room. All funds paid by the corporation for its various activities are paid by checks, which are drawn in this room, and correct and accurate account of all funds received and disbursed are kept therein.

Most of the correspondence of the corporation is conducted in this room. .

(f) Shipping department through which passes all books, magazines, literature and miscellaneous merchandise shipped or mailed from the building.

(g) Subscription department in which records of old, new and delinquent subscribers are kept, and changes of addresses noted.

(h) Room housing mimeograph and stencil machines.

(i) Radio studio where master records are made from scripts prepared by Dr. Winrod and his staff, and from which transcripts are made for radio broadcasts.

(j) The private office of Dr. Winrod.

13. I find that no regular religious services have been conducted in this building and no area or space is provided therefor.

14. I further find that such building is used and has been at all times used by the plaintiffs as its executive and administrative offices

at and from which it administers, controls and supervises its religious and educational activities in their respective fields.

15. The income of the corporation is from three sources: (a) Contributions and gifts for missionary work and for general purposes; (b) subscriptions and advertising in the Defender, and (c) sale of books, tracts, merchandise, etc.

All funds received are carefully checked and then deposited in the bank in two separate accounts, in one of which is kept all contributions for missionary purposes and against which checks are drawn exclusively for such purposes.

All of the other funds received are put in a regular business account and used for the payment of salaries, purchase of books and merchandise to replenish the stock in the book store, radio time, printing equipment and other items of expenses incident to the operation of the corporation.

During the fiscal year ending September 30, 1949, $269,056.50 was received by the Defenders from the following sources:

| | |
|---|---|
| From contributions and gifts: | |
| For mission department | 49,105.60 |
| For general purposes | 159,792.43 |
| Subscriptions and advertising | |
| Defender | 28,657.58 |
| Sale of books, tracts, etc. | 31,500.89 |
| Total | $269,056.50 |

For the same period the organization made disbursements as follows:

| | |
|---|---|
| To field missions | $42,792.48 |
| For radio | 78,113.17 |
| For purchase of books, tracts, etc. | 21,870.08 |
| For operational expenses, including salaries, printing, merchandise purchased, postage and other expenses | 124,482.46 |
| Total | $267,258.19 |

During the fiscal year ending September 30, 1950, the organization had receipts as follows:

| | |
|---|---|
| From contributions and gifts: | |
| For mission department | 46,071.60 |
| For general purposes | 186,446.74 |
| Subscriptions and advertising | |
| Defender | 31,844.11 |
| Sale of books, tracts, etc. | 32,584.11 |
| Total | $296,946.56 |

For the same period the organization made disbursements as follows:

| | |
|---|---|
| To missions | 44,712.12 |
| For radio | 50,703.62 |
| Purchase of books | 17,680.63 |
| Printing, purchase of supplies, and equipment and operational expenses | 179,604.90 |
| Total | $292,001.27. |

I conclude as a fact that the revenue derived from the sale of books and merchandise is used for the purchase of other books and merchandise for resale, and for activities of the corporation other than missionary activities, and that such revenue is not exclusively used for religious purposes.

18. As a general finding summarized from the above detailed facts and other facts not set forth, it is concluded as a fact that the building owned by the Defenders of the Christian Faith, Inc., and about which this controversy centers is not now nor has it at any of the times involved in this controversy been devoted solely and exclusively to religious purposes.

## Conclusions of Law

1. The provision of Section 1 of Article 11 of the Constitution of the State of Kansas, "That all property used exclusively for . . . religious purposes . . . shall be exempt from taxation," should be strictly construed. So construed, this provision exempts from taxation only such property as is used exclusively, directly and immediately for religious purposes.

2. As applied to the state of facts involved herein the provisions of G. S. 1949, 79-201 do not extend or enlarge the exemption provisions of Section 1 of Article 11 of the Constitution of the State of Kansas.

3. The use by the corporation of its building as administrative offices for the control and supervision of its missionary and church activities is not a direct and immediate religious use thereof, as contemplated by the constitutional and statutory tax exemption provisions.

4. The operation by the corporation of a book store in its building as detailed in the findings is not a religious use, as contemplated by the constitutional and statutory tax exemption provisions.

5. The building owned by the Defenders of the Christian Faith,

Inc. is not, within the constitution and statutory provisions of the State of Kansas, used exclusively, immediately and directly for religious purposes, and such building is not exempt from taxation, and the relief sought herein by the plaintiffs should be denied.