179 Kan. 1 (1956)
293 P.2d 234
THE SUNDAY SCHOOL BOARD OF THE SOUTHERN BAPTIST CONVENTION, Plaintiff,
v.
ROY N. McCUE, DALE A. FISHER, O.W. SCHWALM, Constituting and Members of the State Commission of Revenue and Taxation, Defendants.
No. 39,575
Supreme Court of Kansas.
Opinion filed January 28, 1956.
Lester C. Arvin, of Wichita, argued the cause, and Kay K. Arvin, also of Wichita, was with him on the briefs for the plaintiff.
Ervin G. Johnston, of Kansas City, argued the cause, and Paul Hurd, of Topeka, was with him on the briefs for the defendants.
The opinion of the court was delivered by
THIELE, J.:
This is an original proceeding in mandamus in which *2 the plaintiff seeks to compel the State Commission of Revenue and Taxation to issue an order declaring certain personal property exempt from ad valorem taxation for the year 1953. An alternative writ was issued and the Commission filed its answer raising issues of fact and upon application made, this court appointed a commissioner to hear the testimony and to report his findings of fact and conclusions of law to this court.
The commissioner heard the testimony and later reported to this court, his report including findings of fact and conclusions of law and, in summary, that the property involved was not exempt from taxation and that the plaintiff should be denied the relief for which it prayed. The commission filed its motion that this court approve the report of the commissioner and confirm and adopt his findings of fact and conclusions of law and allow it its costs, and shortly thereafter the plaintiff filed its motion that this court set aside the conclusions of law in the above report and find that the property involved was exempt. The case is submitted to us on the two motions.
Inasmuch as the findings of fact are in no manner attacked and as they sufficiently cover the pleadings and the facts at issue, it is not necessary that any review be made of the pleadings.
The substance of the findings of fact in the report is that the particular property plaintiff seeks to have declared exempt from ad valorem tax consists of a merchandise inventory assessed at $16,000, a furnace assessed at $130, and moneys and credits assessed at $4,281.36, all located at its place of business in Wichita operated as the Baptist Book Store; that plaintiff is a nonprofit corporation under the laws of Tennessee for the purpose of establishment, support and maintenance of any Sunday-school undertaking on the part of the Southern Baptist Convention, a voluntary association of more than 28,000 Baptist churches, 109 of which are in Kansas; that plaintiff is authorized to print, purchase and distribute by gift or sale religious literature for the propagation of the gospel and the advancement of the religious faith of Baptist churches associated with the above Convention; to buy and sell Sunday-school supplies and "... to deal in books, stationery and general office supplies and to perform all necessary functions incident to the conduct of its business." The plaintiff's principal place of business is in Nashville, Tennessee, from which point it directs sale and distribution to Baptist churches of Sunday-school literature, church periodicals, *3 supplies and records and some 11,000 various items of merchandise such as office supplies, pictures, books, cameras, audiovisual aids, toys, novelties and gifts, both by catalogs and by ownership and operation of some forty-seven establishments known as Baptist Book Stores, one being in Wichita; that the literature, periodicals and other printed matter are selected and sold as being religious in character and as in keeping with a religious organization, and most of such articles bear some moral axiom or religious phrase; that plaintiff deals in certain types of cameras and audiovisual aids for religious purposes "... although such articles are offered and made available for sale by it to the general public; that many of the items sold and distributed by petitioner are available for purchase at purely secular stores and places of business and are capable of being used by a purchaser for purely secular purposes." Findings are made as to plaintiff's gross receipts and its net income for 1953 and that the net income was used by the plaintiff for religious purposes and that members of Baptist churches in Kansas affiliated with the Convention received benefits; that plaintiff organized its store in Wichita for the purpose of supplying church materials to Kansas Baptists and its activities are "largely confined" to the sale of church supplies and articles of merchandise such as toys, gifts and novelties, both of a religious and secular nature; that the sales in Wichita materially assist plaintiff in its missionary and religious functions in Kansas and sales at a profit provide more funds available to it in its missionary and religious programs and that its book store in Wichita is not used as a place of public worship or as a place of religious instruction; that plaintiff conducts its book store in Wichita in a manner similar to the operation of other retail establishments; that its manager and employees are hired in Nashville, Tennessee, and that reports are made to that office; that the Wichita store manager purchases some similar articles for sale from numerous salesmen who call on him, the purchases being billed to and paid by the Nashville office and in turn charged to the Wichita operation; that in 1953 the costs of operation in Wichita exceeded the receipts, but if there had been a gain it would have been remitted to the Nashville office and there appropriated and distributed for religious purposes. The last finding of fact reads:
"15. That the merchandise inventory owned by petitioner and located in its book store at 231 North Main Street on March 1, 1953, which was assessed for ad valorem tax purposes at $16,000.00 (see Finding No. 4 above) had been purchased or acquired by the manager of said store in the manner described *4 above and on that date was being held for purposes of resale at a profit to Baptist Churches and other religious or secular organizations and to members of the general public; that petitioner's moneys and credits located in Wichita on March 1, 1953 and assessed at $4,281.36 (see finding No. 4) resulted from sales of merchandise made at said Wichita book store; that said merchandise inventory, moneys and credits were not being used exclusively for religious purposes at the time said property was assessed for taxation, nor were they used exclusively for religious purposes at any time during the year 1953; that said merchandise inventory on March 1, 1953, was being held and used at its location for purpose of retail sale at a profit; that said moneys and credits on March 1, 1953, were being held and used at its location to pay the cost of operating said Wichita book store; that said moneys and credits on March 1, 1953, were not appropriated solely to sustain a religious institution; that the furnace owned by petitioner and located in its Wichita book store on March 1, 1953, assessed at $130.00 (see finding No. 4) was not being used exclusively for religious purposes."
The commissioner's conclusions of law are:
"CONCLUSIONS OF LAW.
"1. That the property here involved and assessed for ad valorem taxation for the year 1953 was not used exclusively for religious purposes within the meaning of Section 1, Article XI of the Kansas Constitution and the decisions of the Supreme Court of the State of Kansas. Washburn College v. Commissioners of Shawnee County, 8 Kan. 344; Vail v. Beach, 10 Kan. 214; St. Mary's College v. Crowl, 10 Kan. 442; Stahl v. Educational Association, 54 Kan. 542, 38 Pac. 796; Wheeler v. Weightman, 96 Kan. 50, 149 Pac. 977; Clements v. Ljungdahl, 161 Kan. 274, 167 P.2d 603.
"2. That the moneys and credits here involved were not appropriated solely to sustain a religious institution or association within the meaning of Section 79-201, G.S. 1949 and the decisions of the Supreme Court of Kansas. Cases cited supra and National Council v. Shawnee County, 63 Kan. 808, 66 Pac. 1014.
"3. That the property here involved is not exempt from taxation and the relief sought by petitioner should be denied."
In a preliminary way it may be noted that no attack is made on the findings of fact included in the report of our commissioner, and we are therefore relieved from examining any transcript of the record to determine whether the findings are supported by the evidence.
We first consider the plaintiff's motion that we set aside the conclusions of law contained in the report of the commissioner and find that the property involved is exempt from ad valorem taxation, and in so doing shall follow, as nearly as may be, the order in which plaintiff presents its argument.
After presenting a general argument that the framers of our *5 constitution were aware of the value of religious and moral education and the benefits which would accrue therefrom, they gave religious and educational institutions an exemption from taxation in exchange for those benefits; that the exemption is not a mere gift, but a payment to the people making up religious and charitable institutions who dedicate their lives to promote Christian and moral principles, and that the exemption is for a general public benefit, the statement of which finds support in Washburn College v. Comm'rs of Shawnee Co., 8 Kan. 344, and in many cases where that decision has been cited, the plaintiff then quotes that part of Art. XI, Sec. 1, of our constitution that "All property used exclusively for ... educational ... religious, benevolent and charitable purposes ... shall be exempted from taxation," and makes an analysis of the meaning of the underscored words.
In connection with the word "used", plaintiff's main contention is that the employment of property for a purpose is the use of that property and although recognizing that many articles sold by it can be used for secular purposes, the purchase and sale of all is to promote religious education and religion. For present purposes it may be conceded that the end result is that plaintiff expects to use the gain resulting from purchases and sales for religious purposes but the primary use is to employ the articles handled for sale. The anticipated gains are to be used for plaintiff's advancement of religion.
In connection with the word "exclusively", plaintiff seems perplexed because that word has not been explicitly defined in any of our previous decisions, and it quotes a portion of a definition from Webster's New International Dictionary, Second Edition. The word is an adverb form of the verb "exclude" defined in the above dictionary as "To shut out; to hinder from entrance or admission; to refuse participation, enjoyment or inclusion," and as used in the adverb form means, among other things, to the exclusion of all others, without admission of others to participate, only, solely, purely. We think it implicit in our many decisions where the word has been used, it is in the sense that the use made must be only, solely, and purely for the purpose stated in our constitution, and without admission to participate in any other use. Numerous definitions of like content may be found in Words and Phrases, Permanent Edition. We have previously noted that the primary use of the property was to sell it and the secondary use was to use the *6 gain for religious purposes. We cannot say the use here was exclusively for a religious purpose.
We do not believe it necessary to discuss extensively the meaning of the word "religious." It is the adjective form of the word "religion" defined by the above dictionary as being an apprehension, awareness or conviction of the existence of a supreme being controlling one's destiny. For present purposes there can be no doubt that the plaintiff's operations are conducted in large part for an ultimate religious purpose.
Nor are we presently concerned with the word "shall" as to whether as used it means mandatory or discretionary, for we are of the opinion that if other necessary elements for exemption from taxation are present, no discretion to withhold the exemption exists.
Plaintiff further states that in construing a constitutional provision a court is governed not by what the framers might have meant to say but by what they did say, and that the language of the constitutional provision under consideration is clear and unambiguous. Plaintiff also directs attention to some of our decisions where it has been said that property to be exempt must be used directly, immediately and exclusively and argues that these decisions expand the constitutional mandate. We shall not dwell on the language used nor discuss whether the italicized words were used only as emphasis, for, in any event the three cases cited, i.e., Washburn College v. Comm'rs of Shawnee Co., 8 Kan. 344; St. Mary's College v. Crowl, Treasurer, & c., 10 Kan. 442; and Mason v. Zimmerman, 81 Kan. 799, 106 Pac. 1005, are but a small part of our many decisions dealing with exclusive use.
Plaintiff also contends that in any event its moneys and credits are exempt from taxation under G.S. 1949, 79-201, reciting, in part, that "All moneys and credits belonging exclusively ... to religious ... institutions ... appropriated solely to sustain such institutions ..." shall be exempt from taxation. The difficulty with this claim is that under the findings of fact the moneys and credits were not appropriated to support the institution, but on the contrary were the funds used to pay salaries and operating expenses and for the purchase of merchandise for resale.
We find it unnecessary to review our many decisions dealing with exemption from taxation, a complete list of which may be found in the annotations to Art. XI, Sec. 1, as it appears in the General Statutes of 1949. Our statutes provide that all property not expressly *7 exempt therefrom, shall be subject to taxation (See G.S. 1949, 79-101) and it is well settled that taxation is the rule, exemption is the exception, and one claiming an exemption must clearly disclose his right thereto. See e.g., Clements v. Ljungdahl, 161 Kan. 274, 167 P.2d 603; Defenders of the Christian Faith, Inc. v. Horn, 174 Kan. 40, 254 P.2d 830; Runbeck v. Peterson, 177 Kan. 314, 279 P.2d 233, and the cases cited in each. It was so held in Stahl v. Educational Assoc'n, 54 Kan. 542, 38 Pac. 796. In that decision, which involved claimed contract rights under a charter granted by the territorial legislature in 1858, this court disposed of a case where the facts were that the association was devised a lot in Emporia on which there was a house. The association offered the property for sale but pending sale rented it, the rents and profits being held for the purpose of education and in support and maintenance of Baker University. The association insisted that although the property was not actually occupied or used for the exclusive support of religion or education, yet as the rents or profits were applied exclusively for the purpose of education the property was exempt from taxation. In disposing of the contention, this court said in part:
"... If we were to construe the charter of the association as exempting from taxation real estate occupied by a tenant, because the rents or profits are applied `for the exclusive purposes of religion or education,' then, under its charter, the association could receive and hold large amounts of property, which it could invest in business or loan at interest without paying taxes thereon, if the profits or interest were applied to the designated purposes. If the association might do that, it could go farther, and operate a bank, a store, or any other enterprise, which it had obtained by devise, or otherwise, if the profits were applied exclusively to the purposes of religion or education. Such evidently was not the intention of the legislative assembly of the territory. It was said in Washburn College v. Comm'rs of Shawnee Co., 8 Kan. 344, that
"`The accumulation of large amounts of untaxed property by educational, charitable, religious and other institutions is contrary to the fundamental rule requiring an equal rate of assessment and taxation.'" (l.c. 550.)
It may be conceded that the last cited case is distinguishable from the instant case but the analogies to be drawn from it support the conclusion previously indicated that the property is not being used exclusively for religious purposes. In our view the most that can be said is that plaintiff is conducting a mercantile institution at Wichita, and that the profits derived therefrom are being used for religious purposes.
We find it unnecessary to review our many cases in which the constitutional provision has been considered, including those referred *8 to in our commissioner's report and not previously mentioned. Nothing in them can be said to support a contention that an educational or religious organization may engage in a business activity and because profits from operation thereof are devoted to educational and religious purposes that the stock of merchandise, fixtures and funds used in conducting the business are exempt from taxation.
In our judgment plaintiff has failed to show that the property subjected to taxation was exempt therefrom. It therefore follows that the plaintiff's motion that the commissioner's conclusions of law should be set aside and the property be declared exempt from taxation should be denied, and that the defendants' motion that we approve the report of the commissioner and adopt his findings of fact and conclusions of law should be sustained.
On motion of the plaintiff setting forth requisite facts, it is ordered that John L. McNair and Ira C. Watson be substituted in place of Dale A. Fisher and O.W. Schwalm as parties defendant.
And it is further ordered and adjudged that the plaintiff be denied the relief for which it prayed and that judgment be rendered for the defendants.