The first question to be decided is whether the club's tangible personal property was taxable. In arguing that it was not, the club contends that it was and is not engaged in business as that term is defined by Section 5325-1, General Code.
Section 5325-1, General Code, provides in part:
"`Business' includes all enterprises of whatsoever character conducted for gain, profit or income and extends to personal service occupations."
The club in effect concedes that its tangible personal property would be taxable if the club was engaged in "business" as defined in this quoted portion of Section 5325-1, General Code.
The club recognizes that the word "income" might be given a meaning sufficiently broad to include all revenue. However the club contends that, by reason of the association of the word "income" with the words "gain" and "profit," the word "income" should be interpreted to mean only net and not gross revenue.
In deciding this case, it is not necessary to determine whether this contention of the club is sound. We will assume that the word "income" should be interpreted as "net income." *Page 510 
The question then is whether the club's enterprises (a word which would certainly include activities) are conducted for gain, profit or net income.
The fact, that the expressed purpose of the club is "for improving the breeding of Jersey cattle in the United States," will not prevent a conclusion that the club was conducted for gain, profit or net income.
Thus, the purpose of a corporation for profit may be to manufacture a particular product but it may still be conducted for gain, profit or net income even if it adheres strictly to its expressed purpose of manufacturing that particular product.
The fact, that a corporation is one not for profit, does not mean that its enterprises may not be conducted for gain, profit or net income. It is necessary to distinguish between gain, profit or net income to the incorporators or members and gain, profit or net income to the corporation as a legal entity. For example, there may be a nonprofit corporation, if there is no purpose of pecuniary gain or profit to the incorporators or members, and yet such a corporation may still be conducted for gain, profit or net income to the corporation as a legal entity.
In determining whether the activities of the club constitute "enterprises * * * conducted for gain, profit or [net] income" to the club as a legal entity apart from its members, it is proper to consider the history of the club.
From the time of its organization to April 1, 1947, the club accumulated a surplus of $603,527.88. On that date, the club held cash, United States Treasury obligations, corporate bonds, and a first mortgage, in a total sum in excess of $600,000. During the fiscal year ending March 31, 1947, revenues of the club exceeded its expenditures by a substantial amount.
It is stated in the club's brief: *Page 511 
"These revenues will be retained by the club to offset years in which no such excess exists and the total accumulations, other than the working fund surplus, are to be used in replacing the building which they sold in New York, for contingencies, and for the replacement of office equipment. The activities of the club are not static, but over the years have grown in volume and it is reasonable to assume that this process will continue in the future. It will be essential, if the club is to perform the service for which it was organized, that its expansion keep pace with the demands made upon it. This use of these funds does not convert the club into a business under the statute."
The question involved is not whether such a use of these funds converts the club into a "business" but whether the activities of the club which produced those funds are "conducted for gain, profit or [net] income" and so constitute "business" within the meaning of Section 5325-1, General Code. The accumulations of the club over the years from its activities, and its net revenues from those activities during the year ending March 31, 1947, as well as the foregoing admission in the club's brief that these surplus revenues are necessary for its expansion, clearly indicate that the activities of the club were and are "conducted for gain, profit or [net] income."
In our opinion, the word "business," as defined in Section 5325-1, General Code, clearly includes the activities of the club. These activities, over the years, have resulted in substantial "gain, profit or [net] income" to the club; they resulted in such gain, profit or income during the fiscal year ending March 31, 1947; and such gain, profit or income is regarded by the club as essential for the expansion of those activities. *Page 512 
The club apparently contends that, by his rule 213, the Tax Commissioner recognizes that nonprofit corporations are not ordinarily engaged in business as that term is defined in Section 5325-1, General Code, and that taxation of such a corporation's property is limited to those instances where the corporation makes a specific charge for use of its property. That rule reads:
"Tangible personal property of nonprofit organizations shall be deemed `used in business' and, therefore, subject to tax, when such property is used in connection with customary activities of such organizations for the use and enjoyment of which a special rate or charge is imposed, whether or not the income so derived be accumulated or disbursed in connection with the otheractivities of such organizations.
"The fact that the property of such organizations is put to a use which is similar to or in competition with recognized commercial enterprises, such as the renting of rooms, furnishing of lodging, serving of meals, or furnishing of dancing or other amusement or athletic enjoyment, and for which a specific charge is made, shall be prima facie evidence that the tangible personal property used in connection therewith is subject to tax.
"Intangible personal property belonging to organizations which meet the requirements of Section 5328-1a, General Code, is exempt from taxation."
One difficulty with the club's argument is that it apparently construes the word "which," where it appears in the first paragraph after the words "use and enjoyment of," as referring to property. The word clearly refers to the preceding words "customary activities."
As hereinbefore indicated from the summary of the revenue and expenses of the club for the fiscal year *Page 513 
ending March 31, 1947, fees, which would be special rates or charges, are imposed for the use and enjoyment of the customary activities of the club. It is apparently admitted that the personal property here involved is used in connection with such activities.
The second paragraph of rule 213 is not intended as a limitation upon the first, but merely sets forth certain instances which will constitute "prima facie evidence" that the property, "used in connection" with the specific activities enumerated, is subject to taxation. Even if there is no occasion to call into operation the second paragraph of this rule, it does not follow that the first paragraph should not be applied in accordance with its terms. It is not necessary, in this case, to decide whether the first paragraph might, in some other instances, be inconsistent with any provision of law. In the instant case, the rule can be applied to the facts without raising any question as to whether the rule is inconsistent with any provision of law.
The second question to be decided is whether the credits of the club are exempt from taxation by reason of Section 5328-1a, General Code.
The answer to this question depends upon whether, to use the words of that statute, the club was "organized and operatedexclusively for * * * charitable, scientific, * * * educational, or public purposes * * *."
The mere fact, that the activities of an organization constitute "business" within the meaning of Section 5325-1, General Code, does not necessarily determine that it is not an organization "operated exclusively for * * * charitable, scientific, * * * educational or public purposes."
However, in our opinion, the following operations of the club cannot reasonably be characterized as either *Page 514 
charitable, scientific, educational or for a public purpose:
1. Granting the privilege to use the trade-mark "Jersey Creamline" for a fee.
2. Producing leaflets and materials for use in increasing the sale of Jersey milk and selling such leaflets and materials to users of that trade-mark.
It may be argued that the foregoing activities are merely for the purpose of raising revenue so as to enable the club to carry on its principal purpose of "improving the breeding of Jersey cattle." However, the income from these activities was only slightly in excess of $1,000. That amount does not represent a substantial portion of the club's net income. On the other hand, the promotion of this use of a trade-mark in connection with the sale of Jersey milk, a competitive commercial product, and the furnishing of advertising matter to stimulate such sales clearly emphasize what is apparently an important object of this organization, i.e., the expansion of markets for Jersey milk. Such a purpose is obviously neither a charitable, scientific, educational or public one. The club, being operated in part for such a purpose, is certainly not operated "exclusively" for charitable, scientific, educational or public purposes.
We do not consider it necessary to determine and do not determine which, if any, of the other activities of the club might be considered as ones conducted for a charitable, scientific, educational or public purpose.
Our conclusion is that the club is not entitled to tax exemption under the terms of Section 5328-1a, General Code, for its credits.
The decision of the Board of Tax Appeals, to the extent that it granted such tax exemption and reversed the order of the Tax Commissioner, is unreasonable *Page 515 
and unlawful and is reversed. The decision of the Board of Tax Appeals, to the extent that it affirmed the order of the Tax Commissioner and determined that the club was engaged in business as defined by Section 5325-1, General Code, is not unreasonable or unlawful and is affirmed.
Decision reversed in part and affirmed in part.
WEYGANDT, C.J., MATTHIAS, HART, ZIMMERMAN and TURNER, JJ., concur.
STEWART, J., concurs in paragraphs one, two and three of the syllabus and in the judgment so far as it affirms the decision of the Board of Tax Appeals with reference to the taxability of the tangible personal property of the club, but dissents from paragraph four of the syllabus and from the judgment so far as it reverses the decision of the Board of Tax Appeals as to the nontaxability of the credits of the club.