THE ENGINEERS CLUB OF DAYTON, APPELLANT, *v.* DONAHUE, TAX COMMR., APPELLEE.

[Cite as Engineers Club v. Donahue, Tax Commr., 8 Ohio Misc. 100.]

(No. 58558—Decided March 1, 1966.)

BOARD OF TAX APPEALS.

*Messrs. Smith & Schnacke* and *Mr. Howard N. Thiele, Jr.,* for appellant.
*Mr. William B. Saxbe,* attorney general, and *Mr. Jon A. Ziegler,* for appellee.

This cause and matter came on to be considered by the Board of Tax Appeals upon a notice of appeal filed herein

under date of July 19, 1965, by the appellant above named, from a final order of the Tax Commissioner dated June 28, 1965. In said final order the Tax Commissioner, in passing upon an application for review and redetermination filed with him by appellant, with respect to a personal property tax assessment levied against the appellant for the year 1963, held that tangible personal property listed under the "General Tax List" by appellant was "used in business"; and that the Tax Commissioner found no error in the assessment under review; and issued his certificate of determination. Said certificate of determination is the Tax Commissioner's final order with regard to the assessment from which this appeal was taken to the Board of Tax Appeals.

The appellant, in its notice of appeal to the Board of Tax Appeals, says that the final order of the Tax Commissioner is in error and the pertinent parts of said notice read as follows:

"1. It erroneously denies appellant's application for review and redetermination. The denial is erroneous because appellant's tangible personal property in question *was not used in business* within the provisions of Section 5701.08 and Section 5709.01 of the Ohio Revised Code.

"2. Said finding, order, final determination and journal entry is not sustained by the evidence and is against the weight of the evidence and is contrary to law.

"This appeal is on questions of law and fact.

"Appellant requests that the Board of Tax Appeals order the taking and hearing of evidence additional to that before the Tax Commissioner.

"Appellant prays that the Board of Tax Appeals declare and order that the finding, order, final determination and journal entry (certificate of determination No. 7877) dated June 28, 1965 is in error and further declare and order that the assessment by the Tax Commissioner be abated and held for naught."

The matter was submitted to the Board of Tax Appeals upon the notice of appeal, the statutory transcript supplied by the Tax Commissioner, the testimony and evidence presented to the Board of Tax Appeals at a hearing in Columbus, Ohio, on September 17, 1965, and the briefs supplied by counsel.

The appellant, The Engineers Club of Dayton, is a non-profit corporation organized under the laws of the state of Ohio

in 1914. The original founders of the appellant organization were Colonel Edward A. Deeds and Charles F. Kettering who bought the grounds, built the present building in 1918 and, after personally paying the operating deficit for several years, presented the premises to The Engineers Club of Dayton in or about 1924. Since that date the appellant has been operating the plant or club.

The purpose of appellant's club is set forth in its constitution and bylaws as follows:

Article I, Section 2. "The purpose for which this organization is formed is: The advancement of engineering through furnishing facilities for the educational improvements of its members."

Appellant's club house is located on the edge of the commercial section of downtown Dayton. The building consists of three main floors and a basement. The first or main floor contains the dining area, club offices, restrooms, small check room, and recreational area. The second floor contains a large lounge, an auditorium with permanent seating for 402 persons, and a technical library. The third floor consists of storage rooms and dressing rooms for appellant's employees. The basement contains washroom facilities, check room, two small meeting rooms, workshop and engine room.

Appellant's library contains 3,820 technical books, 2,672 bound technical periodicals, 112 current subscriptions to technical publications and 200 microfilm volumes of technical material. In addition, the appellant maintains a few semitechnical books and publications as well as subscriptions to five newspapers. Appellant has a full-time technically trained librarian on duty at its library five days a week. No fee is charged for the use of this library and it is open only to members. On a few occasions, a student, sponsored by one of appellant's members, may have access to said library for the purpose of preparing a paper, but such student may not take any books out of appellant's library. No charge is made to any such student for such use of appellant's library. The foregoing figures concerning library inventory were given for the year 1964, with testimony that the inventory of the library was approximately the same for 1963.

The auditorium, with a permanent seating capacity of 402

persons, is designed primarily for technical exhibits and presentations. The auditorium has no dressing room or orchestra pit. The floor of the auditorium and stage is carpeted.

The appellant itself has first choice of all dates for programs, second choice is given to technical societies which use appellant's facilities, and if other dates are open they are made available for appellant's members to sponsor scientific, professional or nonscientific groups. Technical societies are charged at the rate of $25 per meeting and nontechnical groups at the rate of $50 per meeting for the use of appellant's auditorium.

The basement meeting rooms are operated on the same basis, with charges of $10 per meeting for technical groups and $15 per meeting for nontechnical, member-sponsored professional or scientific groups. No allocated expense is charged to this operation of rental of auditorium and meeting rooms.

A cigar stand and billiard room are also operated by appellant and although both have shown a net profit no allocated expenses are charged against these operations.

If a proper proportion of allocated expenses was charged against these operations the cigar stand, billiard room and rental operation would show a net loss.

An internal publication, "The Engineer," is published seven times a year. It describes the planned club programs, new books or articles of interest in the library and any special program or plan for the future which might be of interest to the members. Gross income for advertising for the year ending March 31, 1963, was $2,814.50 (entirely from members), and operating expense for the same period was $3,837.06.

Free distribution of "The Engineer" is made to appellant's members and to many other engineering clubs. Many of these clubs reciprocate by furnishing copies of their publications to appellant.

The governing body of appellant is a nine-member board of governors composed of a president, a vice-president, a secretary, a treasurer and five trustees. None of these officers receives any remuneration for his work.

On March 31, 1963, appellant had 1,220 members with receipts for membership dues the preceding year amounting to $79,947.40.

The dining room is open daily except Sundays and holidays

from 11:30 a. m. to 2:30 p. m. During June, July and August the dining room is closed on Saturdays. An average of 173 persons were served luncheons daily during 1963. Gross receipts from appellant's dining room were $93,124.97, with expenses of $102,457.15, for the year ending March 31, 1963. Certain allocated expenses were charged against the food operation. The testimony was that in no remembered instance had the dining room produced a net profit.

Certain funds are maintained by appellant. One is the building fund, which is actually the depreciated value of appellant's physical plant. The sinking fund has a sizeable balance but is accumulated primarily from initiation fees or dues since all other operations taken as a whole show an annual net loss.

The sole question before the Board of Tax Appeals is whether or not the appellant's tangible personal property was "used in business" within the meaning of Section 5701.08, Revised Code.

The appellant relies primarily on the case of *Kirtland Country Club Co.* v. *Bowers, Tax Commr.*, 174 Ohio St. 116, and appellee bases his argument on the *American Jersey Cattle Club* v. *Glander, Tax Commr.*, 152 Ohio St. 506.

Paragraphs 1, 2 and 3 of the syllabus of the *American Jersey Cattle Club case* are as follows:

"1. The fact, that a corporation is organized and operated as one not for profit, does not mean that its enterprises may not be conducted for gain, profit or net income to the corporation as a legal entity apart from its members.

"2. In determining whether the activities of a nonprofit corporation constitute enterprises conducted for gain, profit or net income, it is proper to consider the history of such corporation.

"3. The activities of such a corporation constitute enterprises conducted for gain, profit or net income where it appears that (a) those activities have resulted in the accumulation by the corporation over a period of years of substantial surplus funds, (b) the corporation has had a substantial surplus of *revenues* over expenditures *from those activities* during the preceding year, and (c) the corporation admittedly regards such a

surplus as essential for the expansion of its activities." (Emphasis added.)

The fourth paragraph of the syllabus deals only with the use of a trademark and is not pertinent herein.

Pertinent parts of Section 5701.08, Revised Code, read as follows:

"As used in Title LVII [57] of the Revised Code:

"(A) Personal property is 'used' within the meaning of 'used in business' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as material, parts, products, or merchandise. * * *

"(B) 'Business' includes all enterprises conducted for gain, profit, or income and extends to personal service occupations."

That portion of Section 5709.01, Revised Code, pertinent is:
"* * *. All personal property located and used in business in this state, * * * are [is] subject to taxation, regardless of the residence of the owners thereof. * * *"

From the testimony and the evidence it is clear that, from its inception as an organization in 1924 to the time of the hearing, the club has been operated as a private club primarily for the scientific advancement of its members with a self-serving luncheon club as an adjunct. It was open only to members and their guests and controlled by the board of governors. No officer received any remuneration.

The rents charged for use of the club facilities were incidental, and in most cases would not more than pay for the janitorial service and necessary care. If a proportionate share of allocated expenses was charged against this rental operation, said operation would show a sizeable net loss.

The entire operation could not meet expenses if it were not for the dues collected.

The syllabus of *Kirtland Country Club Co.* v. *Bowers, Tax Commr.*, 174 Ohio St. 116, reads as follows:

"The personal property of an organization formed as a

corporation for profit under Ohio law, which operates a private country club conducted for social and recreational purposes solely for the benefit of its members and not conducted for purposes of gain, profit or income, is not taxable under Section 5709.01, Revised Code.''

The mere fact that appellant did permit other organizations, either technical, scientific or community serving, to use its facilities should not put the appellant in the class of being "in business." Such usage, as shown by pages 32 and 33 of the statutory transcript, indicates scientific, business or civic organizations were the groups to whom appellant's facilities were rented.

In the tests set forth in the *American Jersey Cattle Club case*, as set out in paragraph 3 (b) of the syllabus, *supra*, the vital ingredient is missing in the present case. Such case requires that "3 (b) the corporation has had a *substantial surplus* of revenues over expenditures *from these activities* during the preceding year." (Emphasis added.)

In the instant case, the revenues would never meet expenses without payment of dues either in large amounts or by a large number of members.

When these tests are applied to the facts in the instant case, as said facts are set out in the record, and with the case of *Kirtland Country Club Co.* v. *Bowers, Tax Commr., supra,* as a guideline, it appears clear that the appellant never has conducted its operation with any thought or purpose of gain, profit or net income to the corporation, as such, or with any thought or purpose of providing any monetary gain, profit or net income to the board of governors or members of the organization.

It follows that appellant's tangible personal property here in issue is not "used in business" within the meaning of those words as they are set out in Section 5701.08, Revised Code, and, therefore, said tangible personal property is not subject to taxation under the provisions of Section 5709.01, Revised Code.

Giving effect to these conclusions it is therefore the order of the Board of Tax Appeals that the final order of the Tax Commissioner be, and the same hereby is, reversed, and that this matter be remanded to that official with instructions to correct his tax records accordingly.